PEOPLE v KING

Docket No. 301793. Submitted March 6, 2012, at Grand Rapids. Decided July 31, 2012, at 9:20 a.m. Convening of special panel declined, 297 Mich App 802. Leave to appeal denied, 493 Mich 938.

Raymond E. King was convicted by a jury in the Kent Circuit Court of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*iii*), for engaging in sexual acts with his 13-year-old granddaughter. The court, Mark A. Trusock, J., sentenced defendant to two concurrent prison terms of 12 to 30 years and to lifetime electronic monitoring pursuant to MCL 750.520n following his release. Defendant appealed.

The Court of Appeals *held*:

1. The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but that right is subject to reasonable restrictions. The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve. In this case, defendant failed to establish that constitutional error occurred when he failed argue that any rule of evidence was arbitrary or disproportionate to its purpose either in general or under the facts of this case and, in any event, defendant was allowed to present evidence in the form of his testimony, that of his wife, and of several relatives, which, if believed by the jury, would have provided him a complete defense to the charges brought against him.

2. Evidence of bad acts committed by witnesses may be admitted if the evidence is offered for a proper purpose, is relevant, and the relevance of the evidence is not substantially outweighed by the danger of unfair prejudice. As the finder of fact, the jury is generally entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony. In this case, defendant sought to present evidence that his daughter, the victim's mother, had required her children to steal things for her. Defendant failed to show a logical link between evidence of theft and fabrications of allegations of sexual abuse. Under the circumstances, the evidence of theft was not relevant and was properly excluded.

3. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with it

on a particular occasion, except evidence of a pertinent trait of character offered by an accused. An accused has an absolute right to introduce evidence of his or her character to prove that he or she could not have committed the crime. In this case, defendant sought to admit evidence of his reputation for interacting with teenagers at a juvenile detention facility where he was employed. Defendant had a right to present the evidence, and the trial court improperly excluded it. However, the preserved trial error of excluding proposed character evidence is not grounds for reversal if, after an examination of the entire cause, it does not affirmatively appear that it is more probable than not that the error was outcome determinative. In this case, the proposed character evidence had limited value, in that it had little relevance to the matters at issue in the case. Further, other evidence had already informed the jury of the defendant's longtime employment as a youth specialist at a juvenile detention facility, and it would have been reasonable for the jury to infer that if defendant had a reputation for inappropriate behavior that he would not have remained employed there. Additionally, allowing the character evidence might have opened the door to cross-examination and the net effect might have been more harmful than helpful, defendant was able to present evidence that he behaved appropriately with respect to other teenage relatives in his home, and the prosecution presented a very strong case of defendant's guilt. Thus, it did not appear more probable than not that the error was outcome determinative.

4. Generally, CSC-I is punishable by imprisonment for life or for any term of years. However, for a violation which is committed by an individual 17 years of age or older against an individual less than 13 years of age, the offense is punishable by imprisonment for life or any term of years, but not less than 25 years. In addition to any other penalty imposed, under MCL 750.520b(2)(d) the court must sentence the defendant to lifetime electronic monitoring under MCL 750.520n. Second-degree criminal sexual conduct (CSC-II) is punishable by not more than 15 years' imprisonment. In addition, the court must sentence the defendant to lifetime electronic monitoring if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age. MCL 750.520n(1) provides that a person convicted of CSC-I or CSC-II committed by an individual 17 years of age or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring. MCL 750.520n(1) is ambiguous when read together with MCL 750.520b(2)(d), but the more reasonable construction of MCL 750.520n(1) is that lifetime electronic monitoring of a person convicted of either CSC-I or CSC-II is limited to those situations in

which the victim was under age 13. Accordingly, the Court would have vacated the order for lifetime electronic monitoring but for MCR 7.215(J)(1), which required it to follow the rule established in *People v Brantley*, 296 Mich App 546 (2012). A special panel should be convened under MCR 7.215(J)(3) for the purpose of resolving the conflict that would have been created except for the provisions of MCR 7.215(J)(1).

Affirmed.

FITZGERALD, J., concurring in part and dissenting in part, disagreed with the majority that lifetime electronic monitoring did not apply to persons convicted of CSC-I unless the victim was under 13 years of age. The age limitations within the text of MCL 750.520n(1) only modify the statute's reference to the CSC-II statute. Thus, *Brantley* correctly resolved the issue when it held that any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring and the convening of a special panel was not necessary. In all other respects, Judge FITZGERALD concurred with the majority opinion.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — OPPORTUNITY TO PRESENT A DEFENSE — RULES OF EVIDENCE.

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but that right is subject to reasonable restrictions; Michigan's Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve (US Const, Am VI, US Const, Am XIV).

2. CRIMINAL LAW — EVIDENCE — CHARACTER OF THE ACCUSED.

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with it on a particular occasion, except evidence of a pertinent trait of character offered by an accused; an accused has an absolute right to introduce evidence of his or her character to prove that he or she could not have committed the crime, but the preserved trial error of excluding proposed character evidence is not grounds for reversal if, after an examination of the entire cause, it does not affirmatively appear that it is more probable than not that the error was outcome determinative (MRE 404[a][1]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *William A. Forsyth*, Prosecuting At-

torney, and *Timothy K. McMorrow*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Douglas W. Baker*) for defendant.

Before: METER, P.J., and FITZGERALD and MARKEY, JJ.

MARKEY, J. Defendant appeals by right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*). The victim of the offenses was defendant's 13-year-old granddaughter. The trial court sentenced defendant to two concurrent prison terms of 12 to 30 years and to lifetime electronic monitoring, MCL 750.520n. Defendant asserts two evidentiary trial errors and also asserts that lifetime electronic monitoring is not authorized by law in this case. Regarding the last issue, we would vacate the order for lifetime electronic monitoring but for MCR 7.215(J)(1), which requires that we follow the rule of law established in *People v Brantley*, 296 Mich App 546; 823 NW2d 290 (2012). We explain our disagreement with *Brantley* in part II below and request that a conflict panel be convened. MCR 7.215(J)(2) and (3). We affirm.

### I. EVIDENTIARY ISSUES

Defendant raises two evidentiary issues on appeal, framing each as a violation of his constitutional right to present a defense. Defendant first argues he was denied his constitutional right to present a defense because the trial court precluded presentation of purported evidence that his daughter Jennifer, the victim's mother, had in the past required her children to steal things for her. The defense theorized this evidence should be admitted under MRE 404(b) to show that Jennifer had

a plan, scheme, or system of enticing her own daughters into dishonest behavior to serve her own ends and that Jennifer and her daughters fabricated the allegations against defendant. Second, defendant asserts he was denied his constitutional right to present a defense when the trial court precluded testimony under MRE 404(a)(1) regarding defendant's reputation for positively interacting with teenagers at the Kent County Juvenile Detention Facility where defendant had been employed for many years as a youth specialist. To address defendant's arguments, we must first summarize some of the evidence presented at trial.

## A. SUMMARY OF TRIAL TESTIMONY

Defendant's convictions arose out of a sexual assault committed on his granddaughter on October 26, 2008, when she was 13 years old. The victim did not live with defendant at the time, but that night she spent the night at his apartment after he picked her up from the Kent County Juvenile Detention Facility. She had been arrested for shoplifting. Matthew Fenske, superintendent of the detention facility, testified that records established that the victim was released to defendant's custody on the day in question. She returned with defendant to his apartment and slept in his bed that night. The victim testified that twice during the night defendant attempted vaginal intercourse, partially penetrating her. The victim also testified that defendant molested her and her sisters (JR and DR) on other occasions.

The trial court permitted the prosecution to present evidence under MRE 404(b) of sexual incidents between defendant and both JR and Jennifer. JR testified that defendant sexually touched her in 2004, when she, her mother, and siblings were staying with defendant. JR

was 13 at the time. During the visit, JR sometimes slept in defendant's bed. One time, when the victim was also in bed with their grandfather, JR awoke to find defendant's hand in her pants. JR testified defendant put his fingers in her vagina while he masturbated himself.

DR testified that although she had slept in her grandfather's bed once, nothing inappropriate had happened. DR also testified she had not seen anything inappropriate. DR remembered that the victim tried to wake her one night, but she could not understand what the victim was saying. According to DR, one time the victim had tried to tell her something about defendant and made "a little joke" about something going on. When DR stated that she was "gonna tell momma," the victim stated, "I'm just playing," and then, "I was just lying."

Jennifer testified that growing up, she did not live with her father but when she was 6 or 7 years old she started spending summers with him. When she was about 11 years old, she stayed with defendant for a couple of weeks when he was living in Chicago. According to Jennifer, one night defendant had sexual intercourse with her. Jennifer testified that she ran away for few days, but was returned to defendant's home. She never told anyone what happened, but she refused any further childhood visits with defendant.

During the investigation of this case, Jennifer secretly tape-recorded a conversation with defendant. In the conversation, defendant recalled "what happened between [Jennifer] and [defendant] when [Jennifer] was younger[.]" Defendant explained the incident as having woken up with Jennifer on top of him moving around and he was "feeling unloved" and "so alone." When confronted with the victim's allegations, defen-

dant did not deny them, but said he did not remember because of his use of drugs and alcohol.

Detective Daniel Adams interviewed defendant at the Kent County Juvenile Detention Facility where defendant was working. A tape recording of this interview was played for the jury. During the interview, defendant said he could not remember the alleged incidents because of drug and alcohol abuse.

In his defense, defendant presented the testimony of several relatives who were living in the Chicago household when Jennifer visited. They testified they observed no inappropriate sexual activity. Two nieces and a nephew testified they had stayed with defendant when they were in high school or grade school and nothing inappropriate happened. Another nephew, who was a minister, a high school principal, and a former superintendent at the detention facility, testified to defendant's stellar reputation for truth and honesty.

Defendant's wife, Tammi King, testified that on the night defendant picked the victim up from the detention facility, she observed defendant and the victim in the kitchen arguing over the shoplifting incident. Defendant slapped the victim, and Mrs. King tried to defuse tensions by offering to fix the victim something to eat. Afterward, she escorted the victim to an upstairs bedroom. Mrs. King went back downstairs, but later checked to confirm the victim was asleep in the upstairs bedroom. She went back downstairs, finished her work in the kitchen, and retired for the evening with defendant in their downstairs bedroom.

Defendant testified, denying that he sexually abused the victim, or JR, or Jennifer. With respect to Jennifer, however, he remembered a time when she was visiting only for a short time, maybe a week, and Jennifer had climbed atop him and rubbed against him in a sexual

manner. Defendant testified that he did not sexually
respond. Defendant also testified that on one occasion
the victim behaved similarly. He denied he initiating
any sexually motivated contact with either Jennifer or
the victim.

### B. STANDARD OF REVIEW

A trial court's decision whether to admit or exclude
evidence will be affirmed in the absence of a clear abuse of
discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d
673 (1998). The trial court abuses its discretion when its
decision is outside the range of principled outcomes.
*People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).
We review de novo the trial court's rulings on preliminary
questions of law regarding the admissibility of evidence,
such as the application of a statute or rule of evidence.
*People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).
A preserved trial error in admitting or excluding evidence
is not grounds for reversal unless, after an examination of
the entire cause, it affirmatively appears that it is more
probable than not that the error was outcome determina-
tive. *Id.* at 495-496. Preserved nonstructural trial error of
constitutional magnitude will not merit reversal if it is
harmless beyond a reasonable doubt. *People v Graves*, 458
Mich 476, 482; 581 NW2d 229 (1998).

Whether a defendant was denied his constitutional
right to present a defense is a question of law we review
de novo. *People v Unger*, 278 Mich App 210, 247; 749
NW2d 272 (2008). In this case, defendant did not
preserve his constitutional claims by presenting them
to the trial court. *People v Bauder*, 269 Mich App 174,
177-178; 712 NW2d 506 (2005). Appellate review of
unpreserved constitutional claims is for plain error
affecting the defendant's substantial rights. *People v
Shafier*, 483 Mich 205, 219-220; 768 NW2d 305 (2009).

This requires the defendant to show that the plain error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Moreover, reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused. *Id.*

### C. RIGHT TO PRESENT A DEFENSE

Defendant's claim—that his constitutional right to present a defense was violated by the trial court's ruling excluding alleged evidence that Jennifer required her children to steal things for her benefit—is without merit. There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (citation omitted); see also *People v Aspy*, 292 Mich App 36, 48-49; 808 NW2d 569 (2011). "Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *Unger*, 278 Mich App at 249. But this right is not unlimited and is subject to reasonable restrictions. *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (opinion by Thomas, J.). The right to present a complete defense "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Michigan, like other states, "has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials." *Unger*, 278 Mich App at 250. And our Supreme Court has "broad latitude

under the Constitution to establish rules excluding evidence from criminal trials." *Scheffer*, 523 US at 308 (opinion by Thomas, J.). Thus, an "accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers*, 410 US at 302. The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Scheffer*, 523 US at 308 (opinion by Thomas, J.), quoting *Rock v Arkansas*, 483 US 44, 56; 107 S Ct 2704; 97 L Ed 2d 37 (1987).

In this case, while defendant presents arguments that the trial court misapplied the Michigan Rules of Evidence by excluding certain evidence, he presents no argument whatsoever that any particular rule is arbitrary or disproportionate to the purposes it was designed to serve, either in general or as applied to the facts of this case. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Moreover, it is patent from a review of the trial record that defendant was allowed to present evidence in the form of his testimony, that of his wife, and of several relatives, which, if the jury believed, would have provided defendant a complete defense to the charges brought against him. Consequently, we reject defendant's claim that constitutional error occurred, either in the exclusion of other acts evidence or character evidence.

### D. OTHER ACTS EVIDENCE

We also conclude that the trial court's ruling excluding purported evidence of theft by Jennifer and her

daughters was within the range of principled outcomes, and, therefore, not an abuse of discretion. See *Feezel*, 486 Mich at 192.

Defendant argues that the trial court erred in its pretrial ruling by relying on the prosecutor's argument that because no conviction existed, the proposed evidence was improper impeachment evidence of a crime under MRE 609.[1] On appeal the prosecution concedes that MRE 609 is not controlling on this issue, and that the trial prosecutor may have misspoken by citing MRE 609 rather than MRE 608, which permits attacking or supporting the credibility of witness with testimony of opinion or reputation regarding a witness's "character for truthfulness or untruthfulness . . . ." MRE 608(a). And, in general, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." MRE 608(b). We decline this invitation to speculate, but we do agree with the prosecution's argument that this Court "will not reverse a trial court decision when the lower court reaches the correct result even if for a wrong reason." *Bauder*, 269 Mich App at 187. Moreover, in revisiting this issue during the course of the trial, the court ruled that the proposed evidence was not relevant, MRE 401, and, therefore, was inadmissible, MRE 402. We agree.

We initially note that the prosecution disputes that the excluded evidence exists, at least in admissible

---

[1] MRE 609 permits impeachment with evidence of a conviction for a crime with an element of theft that was punishable by imprisonment in excess of one year, if the conviction or resulting confinement occurred within the past 10 years and the court determines that the evidence has significant probative value on the issue of credibility. MRE 609(a)(2) and (c). "Evidence of juvenile adjudications is generally not admissible under this rule . . . ." MRE 609(e).

form. In arguing this issue during the trial, the prosecutor stated that the allegations regarding Jennifer came from unsubstantiated, anonymous hearsay contained in a Children's Protective Services (CPS) report. Defense counsel conceded the source of the information regarding Jennifer was a CPS report, apparently provided to the defense during discovery. Defense counsel never made, nor offered to make, an offer proof regarding what witnesses he would be able to present and what admissible testimony would substantiate the claims regarding Jennifer. See MRE 103. This failing by itself would support finding that the trial court did not abuse its discretion by excluding the proffered evidence. See *People v Paquette*, 114 Mich App 773, 781; 319 NW2d 390 (1982) (holding no basis for reversal exists when nothing in the record indicates the defendant could have produced the excluded evidence).

Additionally, we find without merit defendant's argument that the evidence should have been admitted under MRE 404(b) to show Jennifer had a plan, system, or scheme of manipulating her daughters into deceitful conduct. We recognize that MRE 404(b) is a rule of inclusion and allows evidence of other acts committed by witnesses, provided the evidence is offered for a proper purpose, is relevant, and the relevance of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 64 n 13, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994); *People v Rockwell*, 188 Mich App 405, 409-410; 470 NW2d 673 (1991); MRE 403. But the touchstone of admissibility of evidence under MRE 404(b), as with all other evidence, is logical relevance. *VanderVliet*, 444 Mich at 61-62. Clearly, evidence is relevant when it affects the credibility of the victim and when it affects the credibility of witnesses who enhance

the victim's credibility. As the finder of fact, the jury is generally entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony. *People v Layher*, 464 Mich 756, 765; 631 NW2d 281 (2001). In this case, however, defendant has failed to establish a logical link between the proffered other acts concerning theft and fabrications of allegations of sexual abuse. Because defendant failed to establish that the purported evidence was logically relevant, he failed to establish a touchstone element necessary for admissibility under MRE 404(b). *VanderVliet*, 444 Mich at 61-62, 74. Consequently, the trial court correctly ruled that the proposed evidence was not relevant, MRE 401, and thus was inadmissible, MRE 402.

Also unpersuasive is defendant's theory of admissibility: that the other acts evidence showed Jennifer used a common plan or scheme to manipulate her daughters into dishonest behavior to serve her own ends. To establish logical relevance under this theory of admissibility, the other acts and defendant's claim of fabrication must be "sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). To meet this criterion of similarity between the other acts (theft) and the fact to be proved (fabrication of sexual acts), there must be "a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id.* at 64-65, quoting 2 Wigmore, Evidence (Chadbourn rev), § 304, p 249 (emphasis omitted). Jennifer's alleged common plan or scheme to manipulate her daughters into stealing things for her is too dissimilar to the victim's assertions of sexual abuse to demonstrate a common plan or scheme.

For all these reasons, we conclude that the trial court did not abuse its discretion by excluding the purported evidence of theft by Jennifer and her daughters.

### E. CHARACTER EVIDENCE

Defendant argues that the trial court erred when it ruled that Fenske would not be permitted to answer defendant's question on cross-examination regarding defendant's reputation for interacting with teenagers at the Kent County Juvenile Detention Facility. Specifically, defendant asserts the testimony should have been permitted under MRE 404(a), which provides, in pertinent part:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) Evidence of a pertinent trait of character offered by an accused . . . .

So, defendant argues, the court erred by restricting him to presenting evidence of reputation under MRE 608.

The prosecution concedes that MRE 404(a)(1) is the pertinent rule regarding the character evidence at issue and that an accused has "an absolute right to introduce evidence of his character to prove that he could not have committed the crime." *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986). Nevertheless, the prosecution asserts error did not occur because defendant's reputation for interaction with teenagers at his workplace is not probative of his character regarding sexual abuse of teenage females in his own household. The prosecution further contends that even if the trial court erred, the error was harmless because the evidence would have provided little benefit to defendant, see *id*.

at 129, and would have "opened the door" to evidence of defendant's inappropriate behavior with female co-workers. MRE 405(a).[2]

We agree with defendant that the trial court should have permitted him to introduce the proposed character evidence under MRE 404(a)(1). *Whitfield*, 425 Mich at 130. But we also agree with the prosecution that the error was harmless. For the reasons discussed in part I(C), the error is ordinary nonconstitutional trial error. The preserved trial error of excluding the proposed character evidence is not grounds for reversal because, after an examination of the entire cause, it does not affirmatively appear that it is more probable than not that the error was outcome determinative. *Lukity*, 460 Mich at 495-496.

First, character evidence of the type excluded here has limited value. "Both the value and the wisdom of presenting character evidence have been doubted. It is thought that such evidence typically adds little of relevance to the determination of the actual issues in a case and is likely to inject extraneous elements." *Whitfield*, 425 Mich at 129. Moreover, the fact that defendant likely behaved appropriately with teenage detainees was implicitly already before the jury, which had heard evidence of defendant's longtime employment as a youth specialist at the juvenile detention facility. It would be reasonable for the jury to infer that if defendant had a reputation for behaving inappropriately with teenage detainees, he would not have remained employed.

---

[2] MRE 405(a) states: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct."

Second, as the prosecution argues, allowing the character evidence might have "opened the door" to cross-examination regarding specific instances of behavior, and the net effect of the evidence might have been more harmful than helpful to defendant. MRE 405(a).

Third, defendant was able to present direct evidence, through the testimony of several relatives, that he behaved appropriately with respect to teenage relatives in his home. This testimony was more pertinent to the charged offenses than Fenske's testimony could have been regarding defendant's reputation at his workplace.

Finally, the prosecution presented a very strong case of defendant's guilt. Defendant presented his own testimony that the offenses did not occur and that of his wife that the offenses could not have occurred. The jury obviously found the prosecution's evidence more credible than that of defendant and his wife. In light of the marginal value of Fenske's excluded testimony and our examination of the entire case, we are convinced that it does not affirmatively appear more probable than not that the error was outcome determinative. *Lukity*, 460 Mich at 495-496.

## II. LIFETIME ELECTRONIC MONITORING

The Legislature in 2006 enacted several tie-barred acts[3] providing for lifetime electronic monitoring of certain sex offenders by the Department of Corrections. See 2006 PA 165 through 172. Defendant argues that reading these provisions together, MCL 750.520n controls over MCL 750.520b(2)(d) so that lifetime electronic

---

[3] By "tie-barring" the acts, the Legislature ensured that none of the acts could take effect unless all of the other specified acts were also enacted.

monitoring does not apply to persons convicted of CSC-I unless the victim was under 13 years of age. The prosecution argues that lifetime electronic monitoring applies to all persons convicted of CSC-I regardless of the victim's age, i.e., the age of the victim is pertinent only to persons convicted of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. This Court agreed with the prosecution's position in *Brantley*, 296 Mich App at 559, holding "that any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring." Dissenting in *Brantley*, Judge K. F. KELLY found persuasive several unpublished opinions of this Court that agreed with defendant's position. *Id.* at 564-567 (K. F. KELLY, J., dissenting), citing *People v Bowman*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2010 (Docket No. 292415), lv den 489 Mich 898 (2011); *People v Quintana*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2011 (Docket No. 295324), lv den 490 Mich 894 (2011); *People v Floyd*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2011 (Docket No. 297393), lv den 491 Mich 886 (2012); and *People v Hampton*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2011 (Docket No. 297224). But for MCR 7.215(J)(1), which requires that we follow *Brantley*, we would vacate the order for lifetime electronic monitoring.

## A. STANDARD OF REVIEW

Defendant failed to object to the imposition of lifetime electronic monitoring in the trial court; therefore, he failed to preserve this issue for appeal. We review an unpreserved claim for plain error affecting substantial rights. *Carines*, 460 Mich at 763. In this case, defendant

raises an issue involving the interpretation and application of a statute, which this Court reviews de novo. *People v Kern*, 288 Mich App 513, 516; 794 NW2d 362 (2010).

### B. PERTINENT STATUTES

The Penal Code, for purposes of the chapter concerning criminal sexual conduct, defines "electronic monitoring" to mean "that term as defined in section 85 of the corrections code of 1953, 1953 PA 232, MCL 791.285." MCL 750.520a(c) as added by 2006 PA 171.

MCL 791.285 provides, pertinent to the issue in this case:

> (1) The lifetime electronic monitoring program is established in the department [of Corrections]. The lifetime electronic monitoring program shall implement a system of monitoring individuals released from parole, prison, or both parole and prison who are sentenced by the court to lifetime electronic monitoring. . . .

> \* \* \*

> (3) As used in this section, "electronic monitoring" means a device by which, through global positioning system satellite or other means, an individual's movement and location are tracked and recorded.

MCL 750.520b(1) sets forth various forms of CSC-I that are punishable, as follows, under MCL 750.520b(2):

> (a) Except as provided in subdivisions (b) and (c), by imprisonment for life or for any term of years.

> (b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

> \* \* \*

(d) In addition to any other penalty imposed under subdivision (a) or (b), the court *shall* sentence the defendant to lifetime electronic monitoring *under section 520n.* [Emphasis added.]

CSC-II is punishable by not more than 15 years' imprisonment. MCL 750.520c(2)(a). "In addition to the penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic monitoring under section 520n *if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age.*" MCL 750.520c(2)(b) (emphasis added).

Finally, and critical to this issue, MCL 750.520n(1) provides:

A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953, 1953 PA 232, MCL 791.285.

C. ANALYSIS

This Court's primary obligation when it interprets a statute is to ascertain and give effect to the intent of the Legislature. *People v Breidenbach*, 489 Mich 1, 8; 798 NW2d 738 (2011). The best way of determining the Legislature's intent is through the plain words used in the statute, read in context according to their ordinary meaning to provide a harmonious meaning to the whole statute. *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). "If the statutory language is unambiguous, no further judicial construction is required or permitted because we presume the Legislature intended the meaning that it plainly expressed." *Id.* "A statutory provision is ambiguous if it irreconcilably conflicts with

another provision or is equally susceptible to more than one meaning." *Kern*, 288 Mich App at 517, citing *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008).

In *Kern*, this Court examined the interplay between MCL 750.520c, MCL 750.520n, and MCL 791.285 as they related to lifetime electronic monitoring of persons convicted of CSC-II but not sentenced to prison. The Court held that the defendant, "who was sentenced to five years' probation, with 365 days to be served in jail, is not subject to lifetime electronic monitoring." *Kern*, 288 Mich App at 525. In conducting its statutory analysis, the *Kern* Court noted the statutes relating to lifetime electronic monitoring were *in pari materia*, opining:

> In general, [s]tatutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole. No one provision may be viewed in a vacuum. The object of the [*in pari materia*] rule is to give effect to the legislative purpose as found in harmonious statutes. [*Id.* at 517 (citations and quotation marks omitted; first alteration in original).]

Defendant argues that although nothing in § 520b limits the mandatory lifetime electronic monitoring of those convicted of CSC-I by the age of the victim, MCL 750.520b(2)(d) specifically requires that the sentence of lifetime electronic monitoring be imposed *"under section 520n."* Defendant reads MCL 750.520n(1) as applying victim age limitations for the imposition of lifetime electronic monitoring to convictions under both § 520b and § 520c. Defendant relies on the unpublished opinions of this Court. He also cites Department of Corrections Policy Directive 6.04.100, but this directive merely restates MCL 750.520n(1).

The prosecution argues that the plain language of MCL 750.520b(2)(d) requires that trial courts "shall

sentence" all persons convicted of CSC-I, regardless of the victim's age, to lifetime electronic monitoring. It argues that MCL 750.520n must be read in the context of § 520b, for which the Legislature provided no victim age limits for lifetime electronic monitoring, and § 520c, in which the Legislature imposed the same victim age limits for lifetime electronic monitoring as stated in § 520n. Read in this context, § 520n requires lifetime electronic monitoring for defendants convicted of violating § 520b *or* defendants 17 years old or older who are convicted of violating § 520c with respect to victims less than 13 years of age.

The prosecution and defendant's interpretations of § 520b and § 520n are equally reasonable. Consequently, when we read these statutory provisions together, as we must, we conclude they are ambiguous because they are "equally susceptible to more than one meaning." *Kern*, 288 Mich App at 517. "[A] statute that is unambiguous on its face can be 'rendered ambiguous by its interaction with and its relation to other statutes.' " *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997) (citations and quotation marks omitted). In this case, the apparently plain language of MCL 750.520b(2)(d) is rendered ambiguous by the conflicting language in MCL 750.520n(1), to which it refers, and judicial construction of the statutes is necessary.

There are rules of statutory construction that favor the prosecution's reading of the statutes. See *Brantley*, 296 Mich App at 557-558. Most notably, " 'Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute . . . .' " *People v Anstey*, 476 Mich 436, 444; 719 NW2d 579 (2006), quoting *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006) (citation and quotation marks omitted). Here, the Legislature

specifically applied victim age limits on the imposition
of lifetime electronic monitoring in § 520c and with
respect to the mandatory minimum sentences in
§ 520b(2)(b) and (c), but imposed no such limitation in
§ 520b(2)(d). Additionally, the last antecedent rule
could support the prosecution's construction of
§ 520n(1). "Generally, a modifying clause will be con-
strued to modify only the last antecedent, unless some-
thing in the subject matter or dominant purpose re-
quires a different interpretation." *People v Henderson*,
282 Mich App 307, 328; 765 NW2d 619 (2009).

Despite these rules of statutory construction, we
believe it more appropriate to focus on the language
that the Legislature chose to include in MCL
750.520b(2)(d), rather than assume intentional omis-
sions. Specifically, although it need not have, the Leg-
islature required that trial courts in sentencing CSC-I
offenders to lifetime electronic monitoring do so "under
section 520n." That section, as defendant argues, and as
numerous judges of this Court have concluded, can
reasonably be read as limiting lifetime electronic moni-
toring of a person convicted of either CSC-I or CSC-II to
when the victim was under age 13. We conclude this
construction is the more reasonable one consistent with
the Legislature's mandate for construing the Penal
Code. "All provisions of this act shall be construed
according to the fair import of their terms, to promote
justice and to effect the objects of the law." MCL 750.2;
see also *Kern*, 288 Mich App at 517. We also conclude
this construction is consistent with the dominant pur-
pose of the Legislature when it enacted the statutory
scheme for lifetime electronic monitoring: to protect
children that are the most vulnerable to sexual
predators—children under the age of 13. As such, this
interpretation of the statute is also consistent with the
last antecedent rule. *Henderson*, 282 Mich App at 328.

For these reasons, we agree with Judge KELLY's analysis of this issue in her dissent in *Brantley* and with the per curiam analyses in the several unpublished opinions of this Court addressing this issue. While these opinions are not binding precedent, MCR 7.215(C)(1), we find them instructive and persuasive. *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011).

### III. CONCLUSION

The evidentiary errors that defendant has raised on appeal are not of constitutional magnitude. With respect to the exclusion of evidence of purported other acts regarding the victim's mother and her daughters, we conclude that the trial court did not abuse its discretion. With respect to the trial court's exclusion of character evidence offered by defendant under MRE 404(a)(1), we conclude the trial court abused its discretion but that the error was not outcome determinative and does not warrant reversal. *Lukity*, 460 Mich at 495-496. Finally, we follow *Brantley* on the issue of lifetime electronic monitoring only because we are required to do so. MCR 7.215(J)(1).

We affirm defendant's convictions and sentences.

METER, P.J., concurred with MARKEY, J.

FITZGERALD, J. (*concurring in part and dissenting in part*). I respectfully disagree with the majority's conclusion that lifetime electronic monitoring does not apply to persons convicted of CSC-I unless the victim was under 13 years of age.

The CSC-I statute provides in MCL 750.520b(2)(d) that "[i]n addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n." The

CSC-II statute provides in MCL 750.520c(2)(b) that "[i]n addition to the penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic monitoring under section 520n *if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age.*" (Emphasis added.) MCL 750.520n(1) then provides that a "person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring . . . ."

Clearly, the CSC-II statute provides for lifetime electronic monitoring under § 520n only if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age. The CSC-I statute clearly does not contain age limitations but, rather, provides that the court shall sentence the defendant to lifetime electronic monitoring under § 520n. Accordingly, it appears clear that, within the text of MCL 750.520n(1), the phrase "for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" modifies § 520c only. I therefore agree with the analysis set forth in *People v Brantley*, 296 Mich App 546; 823 NW2d 290 (2012), and would hold that "any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring." *Id.* at 559. Consequently, I also disagree with the majority's request that a conflict panel be convened pursuant to MCR 7.215(J)(2) and (3). In all other respects, I concur with the majority opinion.