# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BRENDON DIYAMO STANTON-LIPSCOMB,

      Defendant-Appellant.

UNPUBLISHED
September 20, 2018

No. 337433
Wayne Circuit Court
LC No. 16-002452-01-FC

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Brendon Stanton-Lipscomb, appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Stanton-Lipscomb to life in prison without parole for the murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Stanton-Lipscomb's convictions arise from a gang-related shooting at the Eastland Mall in Harper Woods. Approximately two years before the offense, Stanton-Lipscomb's close friend and cousin, Rob Carter, was killed in a drive-by shooting. Members of the Hob Squad gang were allegedly responsible for that shooting. Before Carter's death, Stanton-Lipscomb was associated with the Eastside Ghetto Boys (EGB) gang. After Carter was killed, Stanton-Lipscomb formed the Rob Gang, which operated as a rival to the Hob Squad gang. Tyler Tate, Demetrius Armour, and Tyshon Taylor were all members or supporters of the Rob Gang or affiliated gangs.

On December 26, 2015, Tyrell Lane, a Hob Squad member, was shot and killed after exiting the Burlington Coat Factory store at the Eastland Mall. At trial, the prosecution presented evidence that Tate and Taylor encountered Lane at the mall and called Stanton-Lipscomb to notify him of Lane's presence. Thereafter, Stanton-Lipscomb, Armour, and Stanton-Lipscomb's girlfriend drove together to the mall. Stanton-Lipscomb went inside and Armour parked the car near the exit to the Burlington store. Stanton-Lipscomb spoke with Taylor inside the mall and then went back outside. The prosecution's theory was that Stanton-Lipscomb concealed himself behind a concrete pillar outside the Burlington store entrance, that

-1-

Tate escorted Lane through the Burlington store to the store's exterior exit, and that Stanton-Lipscomb shot Lane when Lane exited the store. Stanton-Lipscomb fled the scene in Armour's waiting vehicle. At trial, Stanton-Lipscomb's girlfriend, who was present during the shooting, identified him as the shooter. Her testimony was corroborated by surveillance videos from the mall's security camera system. In addition, numerous postings and messages from Facebook and cell phone accounts associated with Stanton-Lipscomb supported his identity as the person responsible for murdering Lane.

Stanton-Lipscomb, Tate, Taylor, and Armour were all eventually charged with first-degree premeditated murder in connection with Lane's death, but they were prosecuted separately. Stanton-Lipscomb was convicted in June 2016. Thereafter, Taylor pleaded guilty to a reduced charge of second-degree murder, MCL 750.317. In January 2017, a jury convicted Armour of first-degree premeditated murder, and in April 2017, another jury convicted Tate of first-degree premeditated murder, as well as making a false report of a felony, MCL 750.411a(1)(B), and lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(*i*). Armour's appeal in Docket No. 337434, and Tate's appeal in Docket No. 338360 have been submitted with the instant appeal.

## II. RIGHT TO PRESENT A DEFENSE

### A. STANDARD OF REVIEW

At trial, Stanton-Lipscomb attempted to introduce a police officer's testimony that Tate had identified someone else as a possible suspect. The trial court sustained the prosecutor's objection to this testimony as inadmissible hearsay. Stanton-Lipscomb now argues that the exclusion of this testimony violated his constitutional right to present a defense. Because Stanton-Lipscomb did not raise this constitutional claim in the trial court, this issue is unpreserved. We review unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

### B. ANALYSIS

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, 'the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.' " *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012), quoting *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (quotation marks omitted). Yet, "[t]he right to present a complete defense 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *King*, 297 Mich App at 473, quoting *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Thus, an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *King*, 297 Mich App at 474 (quotation marks and citations omitted). "Michigan, like other states, has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials." *Id*. at 473 (quotation marks and citation omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 474 (quotation marks and citation omitted).

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Stanton-Lipscomb sought to admit Tate's out-of-court statement identifying someone other than Stanton-Lipscomb as a possible perpetrator. Because this statement was offered for its truth (i.e., to prove that someone other than Stanton-Lipscomb was identified as the possible perpetrator), it was hearsay as defined in MRE 801(c). Under MRE 801(d)(1)(C), however, a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . (C) one of identification of a person made after perceiving the person . . . ." Nevertheless, Tate did not testify at trial and was not subject to cross-examination concerning the statement, so the exemption to the definition of hearsay in MRE 801(d)(1)(C) is inapplicable. And, as no other exemption or exception to the hearsay rule applies, the statement was inadmissible. MRE 802.

Furthermore, we reject Stanton-Lipscomb's reliance on *People v Barrera*, 451 Mich 261; 547 NW2d 280 (1996), as supporting his argument that the trial court violated his constitutional right to present a defense by mechanistically excluding Tate's statement as inadmissible hearsay, without acknowledging that his right to present evidence in his defense outweighed adherence to the hearsay rule. In *Barrera*, the three defendants, Barrera, Johnson, and Musall, were prosecuted for the murdering a prostitute. A fourth defendant, Copeland, also was charged with the murder, but tried separately. *Id*. at 264-265. The three defendants sought to admit Copeland's admission to the police that, because he was under the influence of drugs that made him believe that the victim was his girlfriend, he stabbed the victim while she gave oral sex to Musall. *Id*. at 265. Two of the defendants, Barrera and Musall, argued that Copeland's police statement was admissible under the hearsay exception for statements against penal interest, MRE 804(b)(3). *Id*. at 266. The trial court disagreed and excluded the statement. *Id*. Our Supreme Court extensively analyzed the requirements for admission of a statement under MRE 804(b)(3). With respect to the requirement of corroborative evidence, the Court stated that

> the defendant's constitutional right to present exculpatory evidence in his defense and the rationale and purpose underlying MRE 804(b)(3) of ensuring the admission of reliable evidence must reach a balance. We believe they may be viewed as having an inverse relationship: the more crucial the statement is to the defendant's theory of defense, the less corroboration a court may constitutionally require for its admission . . . . [*Barrera*, 451 Mich at 279.]

The Court concluded that when the reliability of Copeland's statement was balanced against its exculpatory value for Barrera and Musall, the defendants' due process rights required admission of the statement. *Id*. at 290-291.

*Barrera* is distinguishable from the instant case. In *Barrera*, the non-testifying codefendant's statement qualified for admission under the hearsay exception for statements against penal interest. MRE 804(b)(3). The Supreme Court ultimately determined that the statement was sufficiently reliable in consideration of its exculpatory value for the defendants. *Barrera*, 451 Mich at 290-291. In this case, Tate's identification does not qualify under *any* hearsay exception, and it is not excluded from the definition of hearsay. Moreover, there are no indicia of reliability in Tate's statement. On the contrary, the circumstances of his identification indicate that he was attempting to exculpate himself by deflecting suspicion away from a co-

participant. At the time the photographic lineup was conducted, Tate was considered a possible additional victim. After further investigation, however, he had been identified as a co-participant for his role in knowingly luring Lane to the location where Stanton-Lipscomb shot him. These circumstances indicate that he had a motive to deflect suspicion away from Stanton-Lipscomb. Accordingly, application of the rules of evidence to exclude this hearsay statement did not violate Stanton-Lipscomb's constitutional right to present a defense.

## III. SENTENCE

### A. STANDARD OF REVIEW

Next, Stanton-Lipscomb argues that because he was only 18½ years old at the time of the offense, imposition of the statutory sentence of mandatory life imprisonment without the possibility of parole violates his Eighth Amendment right against cruel and unusual punishment. Because defendant did not challenge the constitutionality of this statutory penalty at sentencing, this issue is unpreserved. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). We review unpreserved claims of sentencing error for plain error affecting defendant's substantial rights. *Id*.

### B. ANALYSIS

In *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010), the United States Supreme Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause prohibits a sentence of life in prison without parole for a juvenile offender convicted of a non-homicide crime. Later, in *Miller v Alabama*, 567 US 460, 489; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the Court held that a mandatory sentence of life imprisonment without the possibility of parole for juvenile offenders under the age of 18 convicted of murder constitutes cruel and unusual punishment. Stanton-Lipscomb acknowledges that *Graham* and *Miller* do not apply to him because he was convicted of murder and because he was 18 ½ years old at the time of the offense. He argues, however, that use of an offender's eighteenth birthday as the cutoff for when a mandatory life sentence becomes constitutionally permissible is arbitrary, unscientific, and a baseless legal fiction, and that the rationale in *Miller* applies equally to him, rendering his mandatory sentence of life without parole unconstitutionally cruel and unusual.

However, the decisions in *Graham* and *Miller* are rooted in the Court's prior decision in *Roper v Simmons*, 543 US 551, 574; 125 S Ct 1183; 161 L Ed 2d 1 (2005), in which the Court stated:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson* [*v Oklahoma*, 487 US 815; 108 S Ct 2687; 101 L Ed 2d 702 (1988),] drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The age

of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

The Supreme Court's statement in *Roper* reflects that categorical distinctions, albeit imperfect, are necessary in the administration of justice. This statement also reflects that the age of 18 is widely accepted as the point at which adult privileges and responsibilities begin in a broad spectrum of activities. Accordingly, the Eighth Amendment does not bar Michigan from imposing a mandatory sentence of life without parole on offenders who commit first-degree murder after reaching the age of 18.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood