*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

IRA JIBRAIL SINGLETON,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2026
10:38 AM

No. 371092
Berrien Circuit Court
LC No. 2023-000729-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of kidnapping–custodial interference, MCL 750.350a(1). The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to serve three days in jail and an additional two years' probation. We affirm.

## I. FACTS

Defendant and Adrienne Dudley had a dating relationship that began in 2015. Defendant and Dudley never married but had two children together, IS and JS. For a short period, defendant, Dudley, and the two children lived at Dudley's home located in Harper Woods, Michigan.[1] But in January 2021, Dudley took the children and "fled" the Harper Woods home to "get away" from defendant. Leaving everything she owned, Dudley and the children went to Benton Harbor, Michigan.[2] Defendant remained at the Harper Woods home.

When Dudley arrived in Berrien County, she sought state aid. Because of that request, the Friend of the Court contacted Dudley and initiated a child support action against defendant in Berrien County. In September 2021, the Berrien Circuit Court ("the trial court") entered a default judgment regarding child support and custody. The judgment granted Dudley "sole legal and

---

[1] Harper Woods is a city located in Wayne County, Michigan.

[2] Benton Harbor is a city located in Berrien County, Michigan.

physical custody" of the children until further order of the court. Defendant denied that he had any knowledge of this order.

Defendant subsequently obtained a December 2021 parenting-time order from Wayne County Circuit Court, which did not mention the Berrien Circuit Court judgment, and instead stated that: (1) a hearing was held in December 2021, and (2) defendant and Dudley "share joint legal and joint physical custody of their two minor children" and exercise parenting time "on a week on, week off basis until an arrangement can be made that is more acceptable to both parties and the children." Dudley claimed that she was unaware of the Wayne County hearing or order until she contacted police later in this case.

Dudley's testimony vacillated about defendant's interactions with the children after the September 2021 order was entered. At times, she stated that she did not let defendant see the children in person; however, at other times, she testified that defendant would visit her and the children at her home in Benton Harbor "for weeks at a time."

On June 26, 2022, Dudley was hospitalized. She asked defendant to watch the children at her home while she was in the hospital, and defendant agreed. But when Dudley retuned home on June 28, 2022, the door was locked, and no one was inside. Later that day, after several unsuccessful texts and calls, Dudley finally spoke to defendant on the phone. Defendant told Dudley not to worry about the children's whereabouts and that he was keeping them and getting his parenting time.

Dudley filed a kidnapping report with Benton Township police. At all times, Dudley knew that defendant was living with the children at her Harper Woods home. The parties' testimony over the course of the proceedings vacillated and varied regarding whether and how Dudley was allowed to see the children during the subsequent months. But Dudley testified that she tried multiple times to get assistance from the Harper Woods police to retrieve her children. According to Dudley, the Harper Woods police told her: (1) that she did not have a legal right to enter the Harper Woods home "because [she] was solely a landlord now because [she] left the home," (2) that defendant had "paperwork" from Wayne County, and (3) to "deal with the Friend of the Court, which is what [she] did." The Friend of the Court encouraged Dudley to "get an order for return of the children," so Dudley immediately began that process.

In August 2022, the trial court conducted a hearing and issued an ex parte order, mandating that "Defendant shall immediately return the children to the care [and] custody of Ms. Dudley, who has physical custody of them." Likewise, in February 2023, the trial court conducted a hearing and issued another order. The order specifically noted that defendant "was properly served but failed to attend." The order further stated that Dudley "was awarded sole legal and physical custody of the parties' minor children" in September 2021, and that "order remains in effect and supersedes any subsequent orders issued by any other jurisdictions." As with the other Berrien County orders, defendant denied any knowledge that these orders existed before his arrest in this case.

After some investigation, Dudley discovered where defendant had enrolled IS. Dudley provided the default judgment to the school and, with the help of the Michigan State Police,

coordinated a day to pick up IS in March 2023.[3]  On March 13, 2023, the Berrien County Prosecutor's Office charged defendant with two counts of kidnapping–custodial interference. With the assistance of the Michigan State Police, JS returned to Dudley's care in April 2023.

In August 2023, defendant pleaded not guilty and demanded a jury trial.  During the preliminary examination hearing, the trial court commented on the competing orders from Wayne County and Berrien County, questioning the validity of the Wayne County order[4] and noting that Berrien County orders took precedence as that was "the court of prior and continuing jurisdiction . . . ." At the outset of trial, the prosecution argued that the Wayne County order should not be brought up during trial because it was irrelevant.  Defense counsel responded, arguing that the order was relevant to explain why the Harper Woods police would not assist with retrieving the children.  The trial court agreed with the prosecution, noting that the copy it received "was not an official court copy."

Kelly Milnickel with the Berrien County Friend of the Court testified and explained that there was a proof of service for both parties concerning the September 2021 default judgment of support.  Milnickel stated that the first time she spoke to defendant on the phone, he was "concerned about why he was ordered to pay child support," so she "broke down the orders for him and explained what custody was and what parenting time was."  She also testified that defendant called her another time, and she "again reiterated that" Dudley was granted sole legal and sole physical custody of both children.

Defendant testified in his own defense.  He denied ever speaking to Milnickel.  When asked about the first time that Dudley requested return of the children, defendant responded as follows:

> I don't remember her saying give me the kids back.  She said—she asked me when they were returning home.  I said at this point in time we're going on vacation.  I'm going to take them so they can experience being kids, because they had been through a lot at this point in time.  I told her get her stuff together.  When we come back from vacation—you know, because I think [IS] started school that September, and I assured her that [IS] would be home before then, plenty of time before then, because she had to get ready for school.[5]

Defendant was convicted and sentenced, as stated earlier.  Defendant now appeals.

After filing his claim of appeal, defendant moved in the trial court for a new trial or an evidentiary hearing, arguing that he was denied his right to present a defense or, alternatively, that

---

[3] Because JS was not school age, Dudley was unable to retrieve her that day.

[4] Although questions were raised regarding the validity of the Wayne County order, we note that the Wayne County register of actions denotes entry of the order.

[5] As previously stated, defendant did not return IS before school started that year.

he was denied the effective assistance of counsel. After holding a *Ginther*[6] hearing, the trial court denied defendant's motion for a new trial.

## II. EXCLUSION OF EVIDENCE—RIGHT TO PRESENT A DEFENSE

On appeal, defendant argues that the trial court abused its discretion and violated his constitutional right to present a defense by excluding evidence related to the Wayne County custody order. Specifically, defendant argues that the Wayne County order was admissible and relevant to show that he lacked the specific intent required for his custodial-interference convictions. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was raised, addressed, and decided by the lower court, it is preserved for appellate review. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "A trial court's decision whether to admit or exclude evidence will be affirmed in the absence of a clear abuse of discretion." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *Id*. "We review de novo the trial court's rulings on preliminary questions of law regarding the admissibility of evidence, such as the application of a statute or rule of evidence." *Id*. "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. "Preserved nonstructural trial error of constitutional magnitude will not merit reversal if it is harmless beyond a reasonable doubt." *Id*. "Whether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *Id*.

### B. ANALYSIS

"[A] criminal defendant has a state and federal constitutional right to present a defense." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008) (quotation marks and citation omitted). "Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *Id*. at 249. Nevertheless, "an accused's right to present evidence in his defense is not absolute." *Id*. at 250. Defendant's "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citation omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. "Irrelevant evidence is not admissible." MRE 402. A criminal defendant's right to present

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

a defense is not "infringed by MRE 402, which simply bars the admission of irrelevant evidence." *Unger*, 278 Mich App at 250.

The custodial-kidnapping statute provides, in part, as follows:

> An adoptive or natural parent of a child shall not take that child, or retain that child for more than 24 hours, with the intent to detain or conceal the child from any other parent or legal guardian of the child who has custody or parenting time rights under a lawful court order at the time of the taking or retention, or from the person or persons who have adopted the child, or from any other person having lawful charge of the child at the time of the taking or retention. [MCL 750.350a(1).]

Defendant argues that the Wayne County order was relevant to show that that he was unaware of the Berrien County orders and that he conversely believed that the Wayne County order controlled. Even if that were true, the admission of the order is irrelevant because: (1) when defendant failed to return the children, there was a valid court order granting Dudley exclusive parental rights to the children; and (2) defendant did not follow the parenting-time arrangement in the Wayne County order.

The custodial-interference statute simply requires that defendant had the "intent to detain or conceal" the children. MCL 750.350a(1). Custodial interference does not require "that a parent be formally served with a custody order before he or she can be charged with parental kidnapping." *People v McBride*, 204 Mich App 678, 682; 516 NW2d 148 (1994). Instead, "[i]t requires only that the party from whom the child is taken have custody or visitation rights pursuant to a lawful court order at the time of the taking or retention." *Id*. (quotation marks omitted). In this case, Berrien County entered a valid default judgment in September 2021, granting Dudley sole legal and physical custody of the children.[7] Thereafter, defendant took the children at Dudley's request, but he failed to return them to her care for several months. Accordingly, when defendant took and failed to return the children, there was a valid court order granting Dudley exclusive parental rights. See *id*.

Moreover, even assuming that defendant was unaware of the Berrien County orders and that he rightly believed that the Wayne County order applied, defendant made no effort to comply with the Wayne County order either. The Wayne County order mandated that defendant and Dudley exercise "week on, week off" parenting-time, yet there is nothing in the record to show that defendant attempted to comply with that schedule. Indeed, Dudley testified that after defendant took the children in June 2022, she did not see them again until July or August 2022,

---

[7] Because it was the first parenting-time judgment entered, the Berrien County order controlled regardless of defendant's alleged belief in the validity of the Wayne County order. See MCL 722.26(2) ("[T]he action shall be submitted to the circuit court of the county where the child resides . . . ."); see also *Harvey v Harvey*, 470 Mich 186, 189; 680 NW2d 835 (2004) ("[T]he Child Custody Act governs all child custody disputes and gives the circuit court continuing jurisdiction over custody proceedings. MCL 722.26.").

and the children were not returned to her care until March and April 2023. Therefore, even if defendant were operating under the improper assumption that the Wayne County order controlled, defendant's actions would still have been in violation of MCL 750.350a(1), and any error in excluding the Wayne County order was harmless. See MCL 769.26; MCR 2.613(A); *King*, 297 Mich App at 472.

Accordingly, the trial court did not abuse its discretion when it precluded admission of the Wayne County order. See *King*, 297 Mich App at 472. And because the exclusion of the evidence was based on a valid, nonarbitrary rule of evidence, defendant's claim that he was denied the right to present a defense necessarily fails.[8] See *Unger*, 278 Mich App at 250-251.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[8] Defendant's claim that he was denied the right to present a defense is also directly belied by the fact that defendant testified in his own defense and denied that: (1) Dudley asked him to return the children, (2) he was aware of the September 2021 default judgment of support, and (3) he spoke to Friend of the Court.