*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 26, 2019

Plaintiff-Appellee,

v

No. 343804
Ingham Circuit Court
LC No. 17-000335-FC

BILLY CASTLE WILDER,

Defendant-Appellant.

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

A jury found defendant, Billy Castle Wilder, guilty of first-degree premeditated murder, MCL 750.316(1)(a); carrying a concealed weapon (CCW), MCL 750.227; possession of firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve concurrent sentences of life imprisonment for the first-degree murder conviction, 76 to 240 months' imprisonment for the CCW conviction, and 76 to 240 months' imprisonment for the felon-in-possession conviction, and a consecutive sentence of two years' imprisonment for the felony-firearm conviction. Defendant appeals by right. We affirm.

## I. BACKGROUND

On February 23, 2017, defendant shot and killed Willie Williamson outside a liquor store on the corner of Baker Street and Lyons Street in Lansing. The liquor store had 16 surveillance cameras that captured much of what transpired including the shooting itself.[1]

Defendant and his cousin, Tamika White, visited the liquor store at approximately 9:15 p.m. Defendant had partied that day and carried with him a foam coffee cup containing

---

[1] Relevant portions of the video were played for the jury.

cognac. He and White purchased a few items at the counter and a camera captured video footage of defendant transfer a handgun from his left pocket to his right pocket while paying for the items at the counter and then they left the store. Around 9:27 p.m., defendant walked back to the store.

Williamson and his girlfriend drove to the same liquor store. Williamson's friend, Ronald Davis, met him outside the liquor store, and the two entered together. After purchasing some items, Williamson and Davis both left the liquor store and as they passed through the front door, defendant passed by them. Words were exchanged, and defendant and Williamson began a conversation. The three men went to the corner where defendant and Williamson engaged in a conversation regarding defendant's nephew, Jason Wilder, with whom Williamson had an ongoing feud over money owed to Wilder and Williamson's relationship with a woman.[2]

During the conversation, a truck approached and Wilder exited the passenger side. Video footage from one of the cameras showed Wilder approach the corner. As he approached, Williamson saw Wilder and he immediately turned to walk away. The video footage showed defendant holding his coffee cup in his left hand as he drew his handgun with his right hand and point it at Williamson as Wilder walked aggressively toward Williamson.

The video footage showed that, from the moment Williamson saw Wilder, he tried to evade a confrontation by taking steps back away as Wilder advanced toward him. Williamson then turned to his right and retreated, at which point defendant shot Williamson several times in his side and back. Wilder followed Williamson as he ran a few steps down the sidewalk. Meanwhile, defendant turned and walked away casually in the opposite direction still holding his coffee cup. Davis and White joined him. Williamson collapsed on the sidewalk a short distance from the liquor store entrance and later died from his gunshot wounds. At trial, defendant claimed that he shot Williamson in self-defense because he feared Williamson had a gun and was about to shoot him.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that insufficient evidence existed to prove that he premeditated and deliberated to murder Williamson. We disagree.

We review de novo a claim for insufficiency of the evidence supporting a conviction. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). We "view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all of the elements of the offense proved beyond a reasonable doubt." *Id.* (citation omitted). The elements of an offense may be proven beyond a reasonable doubt by circumstantial evidence and reasonable inferences drawn from such evidence, and the

---

[2] Jason Wilder and defendant share the last name. In this opinion, we refer to Jason Wilder as "Wilder."

prosecution need not negate all theories consistent with the defendant's innocence. *Id*. "Further, when reviewing claims of insufficient evidence, this Court must make all reasonable inferences and resolve all credibility conflicts in favor of the jury verdict." *Id*. (citation omitted). "The proper interpretation and application of statutes . . . is a question of law, which this Court reviews de novo." *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

Under MCL 750.316(1)(a), a person commits first-degree murder if that "[m]urder [is] perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." The elements of first-degree murder are: "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). "To 'premeditate' is to 'think about beforehand' and to 'deliberate' is to 'measure and evaluate the major facets of a choice or problem.' " *Id*. (citation omitted).

"Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008) (citation omitted). As explained in *Unger*,

> Some time span between the initial homicidal intent and the ultimate killing is necessary to establish premeditation and deliberation. However, the time required need only be long enough to allow the defendant to take a second look. Circumstantial evidence and reasonable inferences drawn from the evidence may constitute satisfactory proof of premeditation and deliberation. [*Id*. (citations omitted).]

The same evidence used to support premeditation may be used to support deliberation. *Oros*, 502 Mich at 240-241. These terms "are subjective factors usually incapable of direct proof absent an admission or confession by the defendant." *Id*. at 241. In sufficiency of the evidence cases, "[t]he question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id*. (quotation marks and citation omitted; alteration in original).

Premeditation and deliberation may be shown "by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id*. at 242 (citations omitted). In fact, to prove premeditation and deliberation, there must be "some time span between the initial homicidal intent and ultimate action," and it is the jury's task "to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*. (quotation marks and citation omitted). Although no hard-and-fast rule exists for determination whether a sufficient amount of time has passed, "[i]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds.' " *Id*. at 242-243 (quotation marks and citation omitted; alteration in original). "The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it." *Id*. at 243 (quotation marks and citation omitted).

In this case, evidence established that defendant and Wilder had a very close relationship and they spent time together daily. The prosecution presented evidence that defendant personally involved himself in the longstanding feud Wilder had with Williamson. Evidence established that, on previous occasions, defendant and Williamson discussed the feud without resolving it. Defendant also testified that the day before the shooting, Wilder, defendant, and Williamson were involved in an altercation. While driving, Wilder and defendant crossed paths with Williamson who rode in another vehicle. Wilder and Williamson exchanged threats while defendant observed their interaction. Wilder and defendant chased Williamson and his girlfriend in their vehicle.

White testified that, on the night of the incident, she returned to the liquor store to meet a friend to smoke marijuana and while there she noticed defendant and Williamson arguing at the corner concerning money taken from Wilder. She testified that she did not see Williamson armed. Williamson's girlfriend testified that he was not armed the night of his murder. She saw defendant, Williamson, and Davis discussing the feud. Davis testified that defendant suggested that Williamson fight Wilder but Williamson did not want to fight defendant or Wilder. White testified that she saw Wilder arrive, step out of a vehicle, and act like he intended to fight Williamson. Three witnesses testified that Williamson never threatened defendant at any time before the shooting. The jury reviewed the video recording that showed Wilder walk aggressively toward Williamson, defendant draw his handgun from his pocket, defendant raise his hand holding the murder weapon, point it at Williamson, wait momentarily, and then fire the gun multiple times at Williamson as he retreated. The video evidence also showed defendant turn and calmly walk away after shooting Williamson.

Defendant's testimony regarding the incident varied from the video footage. The jury bore the duty to decide what evidence it deemed credible in the face of contradictory accounts. *Unger*, 278 Mich App at 230. From all of this evidence, the jury could reasonably conclude that defendant had a motive to kill Williamson, intended to do so, and that he had sufficient time to premeditate and deliberate about doing so the night of Williamson's murder. The evidence established that defendant knew of the feud, involved himself in it, and argued with Williamson just before shooting him. The evidence also established that, when Wilder arrived, defendant methodically drew his handgun, pointed it at Williamson, held it in that position, and when Williamson tried to retreat, fired repeatedly. The prosecution presented sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that defendant intentionally killed Williamson with premeditation and deliberation.

## B. EXCLUSION OF EVIDENCE

Defendant next argues that the trial court erred by excluding his testimony about a threatening remark made by Williamson toward defendant. Defendant contends that this deprived him of his right to present a defense and prove that he acted in self-defense. We disagree.

We review for an abuse of discretion a trial court's decision regarding the admissibility of evidence. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Id*.

In this case, outside the hearing of the jury, the prosecution brought to the trial court's attention that defendant intended to testify that Williamson threatened him on different occasions and that on the night of the shooting Williamson said that he would shoot defendant in the face. The prosecution argued that such testimony would be inadmissible hearsay offered for the truth of the matter asserted and stated that the prosecution would not have the ability to address the issue because the person who made the alleged statement had been murdered. The prosecution recited that MRE 404(a)(2) permitted evidence of a trait of character for aggression of the victim but argued that the anticipated testimony consisted of hearsay statements that were not admissible under MRE 404(a)(2). Defense counsel argued that the testimony would not be offered for the truth of the matter asserted but as evidence of defendant's state of mind on the night of the incident. The trial court considered whether the proposed testimony revealed the victim's character or reputation. Defense counsel responded that witnesses already testified regarding Williamson having carried guns indicating his capacity for violence. The trial court noted the nature of the evidence that usually could be admitted under MRE 404(a)(2) and asked defense counsel to explain what evidence rule applied. Defense counsel argued that the testimony would establish that defendant heard a threat, and in conjunction with the evidence the jury already heard, such testimony had to be permitted in relation to defendant's self-defense theory. The trial court ruled that it would "allow some testimony along those lines" and Williamson's conduct, but it would not permit testimony that consisted of speculation about other aspects of Williamson's conduct about which defendant had no personal knowledge.

During his direct examination, defendant testified about the feud between Wilder and Williamson and explained that he believed that Williamson thought defendant posed a threat which made defendant afraid of Williamson. Defendant testified that the day before the incident, he and Wilder saw Williamson drive by and Williamson made a gesture with his hand like shooting a gun at them which caused Wilder to turn his vehicle around and pursue Williamson over a block down the street during which Wilder and Williamson exchanged threats. Defendant also testified that, based on his experiences with Williamson, on the night of the incident he believed that Williamson presented a potential threat to him personally.

Defendant also testified that when he and Williamson talked just before the shooting, he suggested that Williamson fight Wilder to end the feud, but Williamson was not agreeable to such a fight and responded, "That they would shoot us in our face." The prosecution objected to defendant's testimony regarding Williamson's statement on hearsay grounds. The trial court sustained the objection and instructed the jury that the testimony was stricken.[3]

---

[3] We note that this very evidence, that the victim said to defendant that he was going to shoot defendant in the face—or words to that effect—did come before the jury in the prosecution's case-in-chief. The DVD recording of defendant's February 28, 2017, police interview was attached to the People's appeal brief as Attachment 1 and purports to be a recording of defendant's statements, while in custody, which was played to the jury.

The record reflects that defendant continued testifying regarding the night of the shooting during which he described Williamson's conduct. Defendant testified that Williamson repeatedly reached into the waistband of his pants and appeared to have a bulge in his sweatshirt, both of which actions made defendant fearful that Williamson had a weapon and intended to hurt him. Defendant testified that when Williamson appeared to jerk and jump, he "panicked. Just got to shooting." Defendant explained that he thought Williamson reached for a gun to shoot him.

Through "the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, 'the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.' " *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citations omitted). This is one of the most "fundamental" rights of defendants. *Id*. at 473. However, "this right is not unlimited and is subject to reasonable restrictions," including the Michigan rules of evidence. *Id*. at 473-474. So long as rules of evidence are not " 'arbitrary' or 'disproportionate to the purposes they are designed to serve,' " they do not infringe on this fundamental right. *Id*. at 474 (quotation marks and citations omitted).

"In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009). Self-defense is codified by MCL 780.972 which provides in pertinent part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Defendant bears the initial burden of producing evidence that he acted in self-defense. *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). Once he has satisfied that burden, the prosecution bears the burden of disproving that defense beyond a reasonable doubt. *Id*. It is well-settled that, in a case in which the defendant asserts self-defense, "prior threats made by the victim to the accused are properly admissible into evidence." *People v Cameron*, 52 Mich App 463, 465; 217 NW2d 401 (1974). In *Cameron*, this Court explained that admission of

---

Defendant stated in the interview twice that the victim said he was going to shoot defendant in the face. Additionally, defendant made numerous statements to the police, in which defendant stated that he thought he was about to be shot and that he acted in self-defense.

The trial transcript of March 1, 2018, indicates "Interview 32 minutes in length played to the jury."

out-of-court statements of previous threats are not contrary to the hearsay rule because the statements apprise the trier of fact of the circumstances known to the accused if offered to establish the defendant's reasonable apprehension of danger and not offered for a hearsay purpose. *Id*. at 465-466. Further, MRE 404(a)(1) provides:

> (a)   Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

> \* \* \*

> (2)   When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor.

Applying these principles, the trial court erred when it sustained the prosecution's objection regarding defendant's testimony of Williamson's threatening remark toward defendant on the night of the shooting. Such evidence related to defendant's self-defense claim and defendant offered that evidence in support of his defense that he believed that Williamson meant to harm him which caused his fear leading to his justifiable shooting of Williamson.

Having concluded that the trial court abused its discretion by excluding the evidence, we must determine whether this error requires reversal of defendant's conviction. To do so, we first must determine whether the claimed constitutional error was a structural error or harmless error. A structural error is a fundamental constitutional error that defies the harmless-error analysis. *People v Miller*, 482 Mich 540, 556; 759 NW2d 850 (2008). Structural errors, however, exist in very limited circumstances. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). Defendant's statement of the issue specifically identifies a purported constitutional error, the denial of the right to present a defense. This type of error is subject to harmless-error analysis. *Crane v Kentucky*, 476 US 683, 691; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (recognizing that a violation of the right to present a defense is subject to harmless-error analysis, and remanding for consideration of whether the error in that case was harmless). MCL 796.26, codifies the harmless error standard and provides that we may not reverse defendant's conviction because of the improper rejection of evidence unless "after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." In *People v Lukity*, 460 Mich 484, 492; 596 NW2d 607 (1999), our Supreme Court reiterated that "reversal is only required if the error was prejudicial."

De novo review of the record establishes that defendant cannot show that the trial court deprived him of his constitutional right to present a defense. The record reflects that defendant testified without objection regarding Williamson's aggressive and threatening conduct toward defendant and Wilder before the night of the shooting. Defendant also testified without objection about conduct by Williamson shortly before the shooting to support his self-defense claim. He testified that Williamson and Davis made certain gestures that caused defendant to

believe that the situation was about to turn violent. Defendant explained that Williamson put his hand in his waistband intimating that he had a gun, had a bulge in his sweatshirt that suggested that he had a gun, argued with defendant regarding the feud and refused defendant's suggestion to resolve the dispute. Defendant explained that Williamson's conduct led defendant to believe that Williamson intended to harm defendant. Defendant testified that Williamson's jerk and jump action triggered defendant's fear of imminent harm and caused him to panic, draw his weapon, and shoot Williamson to protect himself. During the prosecution's case-in-chief, defendant's statement that the victim said he was going to shoot defendant in the face, in addition to all of defendant's other statements of how his actions, as related to the victim, were in self-defense were all played to the jury in defendant's interview with police. All of this evidence establishes that the trial court's exclusion of the threatening statement by Williamson, related by defendant in his trial testimony, did not deprive defendant of his defense on the ground of self-defense.

Although the trial court should not have excluded defendant's testimony about Williamson's threat, the exclusion of that evidence did not deprive defendant of his right to present his defense. Accordingly, the trial court committed harmless error and defendant is not entitled to reversal of his conviction.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also claims that his trial counsel provided him ineffective assistance by failing to seek redaction of references to defendant's parolee status in a portion of the video recording of his police interrogation that the prosecution played for the jury. We disagree.

Defendant failed to preserve this issue for review by moving for a new trial or a *Ginther*[4] hearing. Accordingly, we review this claim for errors apparent on the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

Under Michigan law, effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Defense counsel's performance must be measured against an objective standard of reasonableness and without benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). This Court does not substitute its judgment for that of counsel in a matter of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

On appeal, defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001)

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(citation and quotation marks omitted). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

In the present case, defense counsel did not seek redaction of the video recording of defendant's police interview that disclosed defendant's parolee status at the time of his commission of the charged offenses. Defendant asserts that defense counsel's inaction did not occur in relation to a sound trial strategy. Defendant contends that the mention of his parolee status did not help prove the crimes at issue but portrayed him as a person of bad character with a criminal propensity. We agree that the evidence of defendant's parolee status did not have relevance to proving the charged offenses, and that disclosure of such evidence likely did not arise in relation to the pursuit of a trial strategy, but we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness because the parties already had stipulated to the admission of evidence that defendant had prior felony convictions.

Assuming, however, that no strategic reason existed for defense counsel to permit defendant's parolee status to become known to the jury and in so doing defense counsel's performance fell below an objective standard of reasonableness, such deficient performance did not give rise to a reasonable probability that the outcome would have been different. The overwhelming evidence presented to the jury established defendant's guilt beyond a reasonable doubt. The record does not reflect that the revelation of defendant's parolee status prejudiced defendant. Defendant has failed to establish that a reasonable probability exists that the result of the proceeding would have been different but for counsel's defective performance.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford