*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 23, 2020

Plaintiff-Appellee,

v

No. 345503
Calhoun Circuit Court
LC No. 2017-002202-FC

THADDEUS EUGENE MARKHAM,

Defendant-Appellant.

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant, Thaddeus Eugene Markham, appeals his jury trial convictions of assault with intent to do great bodily harm (AWIGBH), MCL 750.84; assault by strangulation, MCL 750.84(1)(b); and unlawful imprisonment, MCL 750.349b. The trial court sentenced Markham as a fourth-offense habitual offender, MCL 769.12, to 152 months to 50 years' imprisonment for AWIGBH, to 152 months to 50 years' imprisonment for assault by strangulation, and 19 to 50 years' imprisonment for unlawful imprisonment. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

This case arises from Markham physically assaulting the victim sometime on the evening of May 22, 2017. The victim testified that, after she declined Markham's sexual advances and refused to share her alcoholic beverages with him, Markham poured a can of beer over her head and then hit her in the head with the can. While the victim was face down on the floor, Markham hit her on the side of her face, the shoulders, and the back of the head. Markham also strangled the victim with his hands, which caused her to lose consciousness. When the victim regained consciousness, she was on a couch and Markham was in the process of tying her up with garbage bags. Markham, who possessed a large machete-type knife, informed the victim that she was never "going to see daylight" and that he was going to "cut [her] up." After Markham finished tying the victim's hands and feet together, the victim begged Markham to untie her so that she could use the bathroom. Markham ultimately untied the victim and allowed her to do so. After the victim exited the bathroom, Markham brought the victim back to the couch. Although Markham did not tie the

victim up again, he occasionally swung the machete around and made comments about cutting the victim. He also slapped the victim in the face several times.

After an unknown period of time, the victim pretended to fall asleep while Markham sat in a chair nearby. Eventually, Markham left the room to use the bathroom, and the victim ran toward the front door. Markham pursued the victim and grabbed her ankle, causing the victim to fall on her face. The victim managed to escape Markham, ran to a neighbor's home, and requested that the neighbor call 911. At about 4:00 a.m. on May 23, 2017, Officer Jeffrey Johnson arrived at the scene. He noted that the victim was "very frightened," had multiple facial injuries, and had difficulty speaking because her mouth was swollen. The victim was taken to the hospital where she was examined and given pain medication.

Markham was arrested and transported to the police station. Detective Scott Silverman interviewed Markham on the morning of May 23, 2017. During the interview, Markham denied assaulting the victim. On June 8, 2017, Markham was interviewed by Detective Kyle Gorham. During that interview, Markham admitted that he had strangled the victim until the color in her face changed. Markham also admitted that he had "punched" the victim with a closed fist, tied her up with garage bags, and "grabbed a hold of her" when she attempted to leave the house. Markham was emotional during the interview and admitted to Detective Gorham that he was upset with the victim during the assault. However, Markham denied that he had intended to murder her.

Markham was charged with assault with intent to murder, MCL 750.83; assault by strangulation; and unlawful imprisonment. Trial was scheduled for March 2018. Before trial commenced, Markham moved the trial court to adjourn the trial, arguing that he required additional time to investigate a potential defense. Specifically, Markham noted that he suffered from chronic obstructive pulmonary disease (COPD), which he alleged "causes extremely elevated carbon dioxide levels along with significantly reduced oxygen levels" and can "cause substantial cognitive impairment and an inability to formulate intent . . . ." The prosecutor objected to the motion, arguing that Markham was not seeking to put forth a viable defense. The prosecutor requested a *Daubert*[1] hearing in the event that Markham was able to procure an expert to support his defense theory. The trial court granted Markham's motion to adjourn.

Thereafter, Markham retained an expert, and the trial court held a *Daubert* hearing. Dr. Reza Tehrani, a critical pulmonary medicine physician who treated Markham for COPD from approximately 2013 to 2017, testified at the hearing. Dr. Tehrani testified that COPD is caused by the destruction of the lungs and the inability of the lungs to oxygenate the body or excrete carbon dioxide. According to Dr. Tehrani, a buildup of carbon dioxide can result in carbon dioxide narcosis, which causes confusion, lethargy, and interference with physical and mental functions comparable to the use of alcohol or narcotics. Dr. Tehrani testified that a lack of oxygen can cause hypoxia, which can cause agitation, anxiety, and an increased heart rate. Dr. Tehrani agreed that COPD patients could exhibit poor judgment and poor decision making skills, and that it was possible that Markham was experiencing carbon dioxide narcosis and/or hypoxia when the crimes occurred. He noted that Markham had experienced confusion in the past as a result of his

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

condition. Dr. Tehrani testified that Markham's COPD symptoms were aggravated by Markham's smoking and failure to use his oxygen machine.

After the hearing, Markham characterized his proposed defense as an involuntary intoxication defense. Markham argued that Dr. Tehrani's testimony supported that his inability to breathe properly and the buildup of carbon dioxide in his system diminished his ability to form the intent required by law to commit the charged crimes. In response, the prosecutor argued that Dr. Tehrani's testimony was not relevant to the defense of involuntary intoxication and that Markham was proffering a "roundabout" diminished capacity defense that was not viable under Michigan law. The trial court agreed with the prosecutor that Markham was effectively seeking a diminished capacity defense, and held that, when applying the facts of the case to the relevant authority, involuntary intoxication was "not a valid defense." The trial court precluded Dr. Tehrani's testimony and ordered that Markham could not present the defense to the jury.

Trial commenced. The jury acquitted Markham of assault with intent to murder, but convicted him of the lesser included offense of AWIGBH. Markham was also convicted of assault by strangulation and false imprisonment. He was sentenced to terms of imprisonment, and this appeal followed.

## II. STANDARDS OF REVIEW

Markham argues on appeal that he was denied his constitutional right to present a defense based on the trial court's exclusion of Dr. Tehrani's testimony and the trial court's holding that the jury would not be provided with an involuntary intoxication instruction.

A trial court's pretrial ruling on a motion in limine and its decision whether to admit evidence are reviewed for an abuse of discretion. *People v VanSickle*, 303 Mich App 111, 117; 842 NW2d 289 (2013). "This Court [also] reviews for an abuse of discretion the trial court's decision regarding the applicability of a jury instruction to the facts of a specific case." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). A trial court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "This Court reviews de novo whether [a] defendant suffered a deprivation of his constitutional right to present a defense." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

## III. ANALYSIS

### A. DR. TEHRANI'S TESTIMONY

Markham argues that he was deprived of his constitutional right to present a defense by the trial court's decision to preclude Dr. Tehrani's testimony. We disagree.

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). But the right

to present a defense "is not unlimited and is subject to reasonable restrictions." *Id.* "Thus, an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 474 (quotation marks and citation omitted). As relevant to this appeal, MRE 402 provides that "[e]vidence which is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

In this case, Markham offered Dr. Tehrani's testimony to support his defense of involuntary intoxication. "[T]he defense of involuntary intoxication is part of the defense of insanity." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). "Involuntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *Id.* (quotation marks and citation omitted).

> In order to establish the intoxication is not voluntary, the defendant must not know or have reason to know that the [intoxicating substance] is likely to have the intoxicating effect. Second, the [intoxicating substance], not another intoxicant, must have caused the defendant's intoxicated condition. Third, the defendant must establish that as a result of the intoxicated condition, he was rendered temporarily insane. [*Id.* at 188 (quotation marks and citations omitted).]

We conclude that Dr. Tehrani's testimony was not relevant to Markham's proposed defense of involuntary intoxication. Dr. Tehrani's testimony did not support that Markham had ingested intoxicating substances before the crimes were committed and that he was rendered temporarily insane as a result. Rather, Dr. Tehrani testified that Markham's medical condition could cause confusion and could adversely affect his judgment. Furthermore, even assuming arguendo that the symptoms of Markham's COPD were analogous to an intoxicating substance, Dr. Tehrani explained that the symptoms were brought on by Markham's decision to smoke and his failure to use his oxygen machine. Dr. Tehrani's testimony supported that Markham was aware that he could suffer from mental deficiencies if he did not manage his condition given that, in 2015, he suffered from confusion as a result of his COPD. Accordingly, Dr. Tehrani's testimony did not support that Markham was rendered temporarily insane after he unknowingly ingested an intoxicating substance or after he ingested a substance that he did not know to be an intoxicant. See *Caulley*, 197 Mich App at 187. Rather, at best, Dr. Tehrani's testimony supported that Markham could have lacked the ability to form the requisite intent to commit the charged crimes as a result of his medical condition. However, as the trial court concluded, such a theory would be akin to a diminished capacity defense, which is no longer a viable defense in Michigan. See *People v Carpenter*, 464 Mich 223, 232, 237; 627 NW2d 276 (2001) (holding that the diminished capacity defense, which "allows a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime," is no longer viable in Michigan). See also *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008) (holding that the defense of diminished capacity is "no longer viable" in Michigan).

Because Dr. Tehrani's testimony was not relevant to Markham's proposed involuntary intoxication defense, we conclude that the trial court did not abuse its discretion by precluding Dr. Tehrani from testifying at trial. See *People v Bynum*, 496 Mich 610, 624; 852 NW2d 570 (2014)

("[A]n expert witness may not testify about matters that are irrelevant.").[2] Consequently, we reject Markham's claim that constitutional error occurred on this ground.

## B. INVOLUNTARY INTOXICATION INSTRUCTION

Markham next argues that he was denied his constitutional right to a defense because the trial court held that it would not instruct the jury on the defense of involuntary intoxication. We again disagree.

A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Jury instructions "must not exclude material issues, defenses, and theories that are supported by the evidence." *People v Crawford*, 232 Mich App 608, 620; 591 NW2d 669 (1998).

In this case, the evidence did not support a jury instruction on involuntary intoxication. Markham did not present evidence from which the jury could find that he did not knowingly ingest an intoxicating substance or ingested a substance that he did not know to be an intoxicant. See *Caulley*, 197 Mich App at 187. Rather, testimony at trial supported that Markham ingested marijuana and/or alcohol before the assaults occurred, and there was no evidence to support that Markham did not knowingly do so. See *id.* ("[A]n individual who is voluntarily intoxicated does not have grounds for an absolute defense based on his insanity."). Furthermore, as already discussed, the testimony of Dr. Tehrani would not have supported a defense of involuntary intoxication. Consequently, the trial court did not abuse its discretion by declining to instruct the jury on the defense of involuntary intoxication, and we reject Markham's claim that constitutional error occurred on this ground.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[2] Even if we concluded that the trial court erred by precluding Dr. Tehrani's testimony, we would conclude that the error was not outcome determinative. During cross-examination at the *Daubert* hearing, Dr. Tehrani agreed that, if someone was experiencing carbon dioxide narcosis to the point that they were exhibiting confusion and poor judgment, they would be physically unable to "beat somebody over a period of time, tie them up, choke them, threaten them and then chase them down." At trial, the prosecutor presented evidence regarding Markham's interview with Detective Gorham. During this interview, Markham specifically admitted to strangling the victim, punching the victim, and attempting to stop the victim when she tried to flee. Given Dr. Tehrani's testimony and the fact that Markham remembered specific details about the crimes, it is unlikely that the jury would have accepted that Markham was actually intoxicated. Thus, even when assuming error arguendo, the trial court's error was harmless. See *People v McLaughlin*, 258 Mich App 635; 672 NW2d 860 (2003).