*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER JAMES HEMWALL,

        Defendant-Appellant.

UNPUBLISHED
September 10, 2020

No. 347828
Monroe Circuit Court
LC No. 18-244493-FC

Before: JANSEN, P.J., and K.F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Christopher James Hemwall, was convicted by a jury of three counts of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(a), and three counts of second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c(1)(a). The trial court sentenced Hemwall to 210 to 480 months' imprisonment for the CSC-I convictions and to 86 to 180 months' imprisonment for the CSC-II convictions. We affirm.

## I. BACKGROUND

This case arises out of allegations that Hemwall sexually abused his twin half-sisters, EH and KH, when they were between the ages of four and six years old. EH and KH disclosed the abuse to law enforcement in 2017 when they were 15 years old, and Hemwall was charged with four counts of CSC-I and three counts of CSC-II. As part of his defense, Hemwall sought to call Matthew Rosenberg as an expert witness at trial. Rosenberg's proposed testimony included the importance of using proper interviewing techniques, the characteristics of typical sexual offenders, and the typical characteristics of sexually abused children. Hemwall asserted that Rosenberg's testimony was necessary to help the jury understand: (1) that law enforcement failed to employ proper interviewing protocols during the 2017 interviews of EH and KH, (2) his claim that delayed disclosure of abuse was uncommon, and (3) his assertion that sexual offenders exhibit certain behaviors that Hemwall did not possess. The prosecutor moved to preclude Rosenberg from testifying at trial under MRE 702. After hearing oral argument, the trial court granted the motion in limine and precluded Rosenberg from testifying.

-1-

At trial, Detective Michael Peterson, a Detective Sergeant for the Michigan State Police, testified that he interviewed EH and KH using forensic interview protocols and that he initiated an investigation after the interviews. EH and KH testified in detail about the sexual abuse, and aspects of their testimony was corroborated by other members of their family. Hemwall testified in his own defense and denied that he had ever sexually abused EH or KH. Several other witnesses also testified for the defense, indicating that they had never observed any conduct that would indicate that EH or KH were afraid of Hemwall. Hemwall was convicted of three counts of CSC-I and three counts of CSC-II and was acquitted of one count of CSC-I. Hemwall was sentenced as described above. This appeal followed.

## II. ANALYSIS

Hemwall argues that the trial court abused its discretion when it granted the prosecutor's motion in limine and that he was denied the opportunity to present a complete defense as a result of the trial court precluding Rosenberg from testifying at trial.

### A. EXCLUSION OF ROSENBERG'S PROPOSED TESTIMONY

We review a trial court's decision whether to admit expert witness testimony for an abuse of discretion. *People v Matuszak*, 263 Mich App 42, 47; 687 NW2d 342 (2004). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "[D]ecisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

A trial court evaluating the admissibility of proposed expert testimony under MRE 702 "must ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). "However, to be admissible under MRE 702, the testimony must first be determined to be legally relevant." *People v Peterson*, 450 Mich 349, 363; 537 NW2d 857, amended 450 Mich 1212 (1995).

### 1. BEHAVIOR OF SEXUAL OFFENDERS

Hemwall first argues that Rosenberg should have been permitted to testify regarding whether Hemwall possessed characteristics consistent with those of a sexually abusive individual. We conclude that Hemwall has waived any claim of error in this regard.

A waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (citation and quotation marks omitted). "A stipulation constitutes a waiver of any alleged error, so there is no error for us to review." *People v Eisen*, 296 Mich App 326, 328-329; 820 NW2d 229 (2012).

During the hearing regarding the prosecutor's motion in limine, the following exchange occurred:

> *The Prosecutor*:  With regard to the expert's opinions as to [Mr. Hemwall's] lack of typical sex offender characteristics, it's my understanding that for the . . . reasons identified under *People v Dobek*, [274 Mich App 58; 732 NW2d 546 (2007)[1]], the parties agree that the expert will not—will not testify regarding the sex offender characteristics of [Mr. Hemwall].

> *Defense Counsel*:  And that's correct, your Honor.

By defense counsel affirmatively agreeing that Rosenberg's proposed testimony regarding whether Hemwall possessed characteristics consistent with those of a sexually abusive individual was inadmissible at trial, any claim of error in that regard was waived.  See *id*.  Thus, Hemwall is not entitled to relief in relation to this argument.

## 2. BEHAVIOR OF THE VICTIMS

Next, Hemwall argues that the trial court abused its discretion when it excluded Rosenberg's proposed testimony that it is uncommon for sexual abuse victims to delay in reporting abuse because the testimony would have assisted the trier of fact in understanding a fact in issue. We disagree.

In *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013), our Supreme Court explained:

> Because it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial.  Such comments have no probative value, because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence. [Citation and quotation marks omitted.]

In this case, Hemwall acknowledges on appeal that he offered the proposed evidence in order to establish that "delayed reporting is not common" and that the victims' failure to report the abuse until 2017 was therefore not consistent with the behavior of sexually abused children.  Thus, Hemwall admittedly sought to admit Rosenberg's testimony in order to challenge the veracity of

---

[1] In *Dobek*, 274 Mich App at 92, the trial court precluded the defendant from introducing expert testimony that the defendant "did not exhibit characteristics or fit the profile of a typical sex offender as determined by psychological testing and interviews."  The *Dobek* Court upheld the trial court's evidentiary ruling, in part, based on its finding that the expert's testimony came "dangerously close to constituting testimony that [the] defendant [was] not a sex offender, testimony vouching for [the] defendant's veracity, and testimony that [the] defendant [was] not guilty."  *Id*. at 100.

the victims' allegations. Because it is the role of the jury—not expert witnesses—to determine whether a victim's allegations are credible, the trial court did not abuse its discretion by precluding such testimony. See *id*.

### 3. FORENSIC INTERVIEW PROTOCOLS

Next, Hemwall argues that the trial court abused its discretion when it excluded Rosenberg's testimony regarding Detective Peterson's compliance with forensic interview protocols when he interviewed the victims. We agree.

When determining whether to admit expert testimony under MRE 702, "the threshold inquiry—whether the proposed expert testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue'—is . . . not satisfied if the proffered testimony is not relevant or does not involve a matter that is beyond the common understanding of the average juror." *Kowalski*, 492 Mich at 121. To determine whether expert testimony is required for a juror to understand a fact in issue, this Court applies "common sense to determine whether an untrained layman could determine intelligently and to the best possible degree the issue involved without the aid of experts." *People v Ackerman*, 257 Mich App 434, 445; 669 NW2d 818 (2003).

Under the Michigan Child Protection Law, MCL 722.621 *et seq*., which encompasses child sexual abuse, "law enforcement officials" are required to "conduct investigations in compliance with the protocols adopted and implemented as required by subsection (6)." MCL 722.628(4). Subsection (6) of MCL 722.628 provides:

> In each county, the prosecuting attorney and the department shall adopt and implement standard child abuse and child neglect investigation and interview protocols using as a model the protocols developed by the governor's task force on children's justice . . . .

Thus, in a CSC case involving a child victim, law enforcement officials must conduct their investigations in compliance with the forensic interview protocols adopted and implemented within their counties. We conclude that untrained layman lack direct knowledge of or experience with forensic interview protocols and how improper interviewing techniques could taint the accuracy of allegations put forth by alleged child sexual assault victims. Indeed, forensic interview protocols are generally a topic of expert testimony in CSC trials involving child victims because compliance with the protocols bear on the accuracy, validity, and potential tainting of CSC allegations. See e.g., *People v Trakhtenberg*, 493 Mich 38, 54-55; 826 NW2d 136 (2012) (holding that, in a CSC case turning solely on credibility, a reasonable attorney would have consulted with an expert on such matters as forensic interviewing protocols in order to develop a defense). Therefore, we conclude that Rosenberg's expert testimony regarding proper forensic interview protocols was relevant and would have "assist[ed] the trier of fact to understand the evidence or to determine a fact in issue." See MRE 702.

Nonetheless, because we cannot conclude that the error resulted in a miscarriage of justice, Hemwall is not entitled to a new trial. See MCL 769.26. See also *Lukity*, 460 Mich at 495-496. At trial, Detective Peterson did not testify about the specific statements made by the victims during their interviews, and the jury did not evaluate the interviews because the tapes and transcripts were

not admitted into evidence. Rather, Detective Peterson testified that, based on the victims' allegations, he initiated an investigation against Hemwall. At trial, EH testified that she was sexually abused by Hemwall "around ten" times. EH provided specific details of five separate instances of sexual abuse while Hemwall was living in the family home. EH also testified that Hemwall attempted to sexually abuse her in 2014 when she was visiting him in Maryland. KH testified that Hemwall sexually abused her on a single occasion, and she explained the details of the abuse.

The victims' testimony was corroborated by other members of their family. The victims' mother testified that EH did not like to be touched when she was a child. The victims' mother also testified that Hemwall appeared to single out EH and KH by buying them gifts and by arranging for EH to come to visit him when he lived in Maryland. The victims' father testified about a time when Hemwall had made a comment "out of left field" that the victims were going to be "f***** up anyway." The victims' father thought the comment was odd because they were discussing the amputation of Hemwall's leg—not the victims—when Hemwall made the comment. In the days before EH disclosed the sexual abuse, several members of the family were watching a news report regarding sexual assault on television. The victims' mother heard Hemwall ask EH, "do you remember when you used to come into my room all the time[?]" The victims' father recalled that, on several occasions, Hemwall made unprovoked comments about EH and KH coming into his room when they were younger. Moreover, the victims' older sister recalled several occasions in which Hemwall escorted the victims to his bedroom when they were young children. After this occurred, Hemwall would tell other family members that the victims came into his room on their own.

Therefore, even if Rosenberg's proposed testimony regarding forensic interview protocols could have undermined Detective Peterson's testimony regarding the victims' reported sexual abuse, the outcome of trial would not have been different. The victims testified regarding specific and graphic details of the instances of sexual abuse, and the victims' family corroborated several aspects of the victims' testimony. The jury was able to assess the victims' credibility, and the victims' credibility and memories were repeatedly tested by defense counsel on cross-examination. The inconsistencies in the victims' statements were also highlighted in defense counsel's closing argument. Furthermore, although Detective Peterson was not cross-examined regarding his compliance with specific aspects of forensic interview protocols, defense counsel challenged Detective Peterson's credibility by questioning him regarding his potential biases throughout the investigation and was successful in impeaching him. Defense counsel also questioned Detective Peterson about his failure to interview certain witnesses and elicited testimony that false allegations occur in sexual assault cases. Nonetheless, the jury apparently found the testimony of the victims, the victims' family members, and Detective Peterson to be credible given that it convicted Hemwall of all but one count of CSC-I despite Hemwall's denial of any instances of sexual abuse. Thus, despite the improper exclusion of Rosenberg's proposed testimony, Hemwall is not entitled to the relief he seeks.

## B. RIGHT TO PRESENT A COMPLETE DEFENSE

"To preserve an issue for appellate review, a party must object below and specify the same ground for objection that it argues on appeal." *People v Bosca*, 310 Mich App 1, 46; 871 NW2d 307 (2015), application for leave to appeal held in abeyance 911 NW2d 465 (2018). In the trial court, Hemwall failed to assert that he was denied his constitutional right to present a defense. Therefore, this issue is unpreserved, and we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. A defendant bears the burden of persuasion with respect to prejudice. *Id*.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (citation omitted). The right to present a complete defense includes the right to call witnesses whose testimony is relevant and material to the defense. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). However, a defendant's right to present a complete defense "is not unlimited and is subject to reasonable restrictions." *King*, 297 Mich App at 473. A defendant's "right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. (citation and quotation marks omitted). "Thus, an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (citation and quotation marks omitted).

As previously discussed, Hemwall waived any claim of error concerning the exclusion of Rosenberg's proposed testimony regarding the typical behavior of sexual offenders. Additionally, the trial court did not abuse its discretion by excluding Rosenberg's proposed testimony regarding the typical behavior of sexual abuse victims. Indeed, such evidence has "no probative value, because [it does] nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." See *Musser*, 494 Mich at 349. Consequently, because the rules of evidence precluded the admission of such evidence, no constitutional error occurred in that regard.

However, as previously discussed, the trial court abused its discretion when it excluded Rosenberg's proposed testimony regarding Detective Peterson's compliance with forensic interview protocols. Thus, the trial court committed an error, and the error was plain. However, the plain error did not affect Hemwall's substantial rights because it did not affect the outcome of the trial. As previously discussed, even if Hemwall had the opportunity to present Rosenberg's proposed testimony regarding forensic interview protocols, thereby undermining Detective Peterson's testimony regarding the victims' reported sexual abuse, the outcome of the trial would not have differed. At trial, the victims testified regarding specific and graphic details of the instances of sexual abuse, and the victims' family members corroborated several aspects of the victims' testimony. Furthermore, although Detective Peterson was not cross-examined regarding his compliance with specific aspects of forensic interview protocols, defense counsel challenged Detective Peterson's credibility by questioning him regarding his potential biases throughout his investigation. The jury found this evidence to be credible when it found that Hemwall sexually

abused EH and KH despite his testimony denying any instances of sexual abuse. Therefore, because Hemwall has failed to show plain error affecting his substantial rights, he is not entitled to relief. See *Carines*, 460 Mich at 763.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron