*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 362438
Wayne Circuit Court
LC No. 19-008251-01-FH

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's judgment of sentence in which he was sentenced to 6 to 15 years' imprisonment for second-degree home invasion. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2019, defendant pleaded guilty to second-degree home invasion, MCL 750.110a(3), admitting that he entered a residential home through the window on December 20, 2019, with the intent to steal items inside. The trial court sentenced defendant to two years at a Holmes Youthful Trainee Act ("HYTA"), MCL 762.11 *et seq.*, correctional facility, and one year of probation following release. Defendant was also ordered to pay $1,300 in court costs.

In 2021, a hearing was held at the request of the Department of Corrections for the trial court to revoke defendant's HYTA status because defendant was not complying with the terms of his incarceration by incurring numerous "misconducts." At the hearing, the trial court noted defendant's extensive history of misconduct, difficulty with impulse control, and poor decision making. Defendant's misconducts included assault and battery of a staff member, assault and battery of a prisoner, fighting, threatening behavior, unauthorized occupation of a cell, destruction and misuse of property, interference with

---

[1] *People v Johnson*, unpublished order of the Court of Appeals, entered September 12, 2022 (Docket No. 362438).

administrative rules, disobeying direct orders, insolence, substance abuse, theft and possession of stolen property, creating disturbances, sexual misconduct, and being out of place. The trial court revoked defendant's HYTA status and ordered that he be resentenced.

At defendant's subsequent sentencing hearing, the trial court noted that defendant's guilty pleas to fleeing and eluding a police officer and possession of a loaded firearm were not included in the prior record variable score because they postdated the home invasion. The trial court recognized the minimum sentencing guidelines range was 0 to 17 months, but announced it was going to depart from the minimum sentencing guidelines range because defendant was "not amenable to rehabilitation," demonstrated in part by the fact he committed the home invasion and the other two subsequent offenses after many years in juvenile correctional facilities.

The trial court also noted that defendant did not have a suitable release plan because the existing plan provided for his release into his father's supervision, who had been incapable of preventing defendant from committing crimes in the past. The trial court also recognized the seriousness of defendant's home invasion offense in support of its departure from the guidelines range. The court highlighted that one of the two offenses defendant committed after the home invasion involved a gun, making defendant a danger to himself and others. The trial court also relied on the hundreds of violations defendant committed while at correctional facilities, stating that it was more than the trial judge had ever seen. Thus, the trial court sentenced defendant to 6 to 15 years' imprisonment and ordered that the previous costs remain in full force and effect.

## III.  DEPARTURE SENTENCE

On appeal, defendant first argues the trial court abused its discretion when it departed from the minimum sentencing guidelines range of 0 to 17 months, and imposed a sentence of 6 to 15 years' imprisonment. We disagree.

## A.  STANDARD OF REVIEW

This Court reviews sentencing decisions for abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentence is an abuse of discretion if it is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 474 (quotation marks and citation omitted). While the sentencing guidelines are highly relevant and must be considered by a trial court when determining the reasonableness of a sentence, they carry no presumption that an out-of-guidelines sentence is unreasonable: "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.* at 475 (quotation marks and citation omitted). "A reviewing court may not substitute its own reasons for departure. Nor may it speculate about conceivable reasons for departure that the trial court did not articulate or that cannot reasonably be inferred from what the trial court articulated." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008).

## B.  ANALYSIS

The sentencing guidelines were initially enacted to promote proportionate sentences by incorporating the principle of proportionality through their use of offense variables and prior offense variables to facilitate calculation of a recommended minimum sentence range. *Id*. at 305. Thus, the

guidelines provide "objective factual guideposts that can assist sentencing courts in ensuring that the offenders with similar offense and offender characteristics receive substantially similar sentences." *Id*. at 309 (quotation marks and citations omitted).

In *Apprendi v New Jersey,* 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that the Sixth Amendment[2] right to a jury trial requires that any fact other than a prior conviction that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and be proved beyond a reasonable doubt. *Apprendi*, 530 US at 476-480. In *Alleyne v United States,* 570 US 99, 103; 133 S Ct 2151; 186 L Ed 2d 314 (2013), this was expanded to include any fact that would increase the statutory minimum.

In 2015, the Michigan Supreme Court held that the Legislature's sentencing guidelines violated the Sixth Amendment insofar as they "require[d] a court to increase a defendant's minimum sentence beyond the minimum sentence authorized by the jury's verdict alone." *People v Lockridge*, 498 Mich 358, 378; 870 NW2d 502 (2015). The *Lockridge* Court concluded that the appropriate remedy for the constitutional violation was to treat the guidelines as advisory only, such that courts were free to sentence outside the guidelines' minimum sentence range without finding and articulating "substantial and compelling" reasons for doing so, and that the standard of review for a sentence outside the range would be reasonableness. *Id*. 392. However, the Court concluded that trial courts must "continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id.*

In *Steanhouse*, the Michigan Supreme Court held that it would be a violation of the Sixth Amendment for the sentencing guidelines to carry a presumption that an out-of-guidelines sentence was disproportionate, noting that the United States Supreme Court had prohibited "presumptions of unreasonableness for out-of-guidelines sentences." *Steanhouse*, 500 Mich at 474. Accordingly, the Court rejected the notion that an out-of-guidelines sentence should "alert the appellate court to the possibility of a misclassification of the seriousness of a given crime by a given offender and a misuse of the legislative sentencing scheme." *Id*. (quotation marks and citations omitted).

Lastly, in *People v Dixon-Bey,* 321 Mich App 490, 524-525; 909 NW2d 458 (2017), this Court interpreted the requirement to "consult and take into account" the guidelines, stating that "[b]ecause the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." Thus

> relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines

---

[2] The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. [US Const, Am VI.]

accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. [*Id*. at 525 (citations omitted).]

Other factors "include the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Id*. at 525 n 9 (quotation marks and citations omitted).

Turning to the present case, the trial court explained it was imposing a minimum sentence with three additional years to the three previously imposed in order to give defendant time to mature, reflect, and reach the point where he was no longer a danger to himself or others. The trial court justified departing from the minimum sentencing guidelines range by noting defendant was "not amenable to rehabilitation," which was demonstrated by defendant's commission of three crimes after many years in juvenile correctional facilities. The trial court also explained it was departing from the sentencing guidelines because the guidelines did not consider: (1) defendant's two convictions that occurred after the home invasion and, therefore, not part of the *prior* record variable score; (2) the dozens of misconducts defendant committed while in correctional facilities; (3) defendant's lack of behavioral progress over the eight years of court and adult supervision; (4) the dangerousness of defendant's crimes; and (5) the inadequate supervision defendant would have if released. Thus, the trial court did not abuse its discretion when it departed from the guidelines because the court acknowledged and provided reasons for its departure. See *Dixon-Bey*, 321 Mich App at 525 (stating that trial courts must justify its departure from the sentencing guidelines by explaining why the sentence imposed is more proportionate to the offense and offender than a sentence within the guidelines range).

We turn next to the issue of whether the extent of the trial court's departure was reasonable. The court repeatedly emphasized the seriousness of second-degree home invasion, noting defendant entered a residence, stole intimate and expensive items, and seriously violated the victim's privacy. The court also considered many factors not addressed by the guidelines, including the fact there was no relationship between the victim and defendant and defendant's hundreds of misconducts while in custody. See *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) ("[F]actors not considered by the guidelines [include] the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation."). Additionally, when increasing defendant's minimum sentence, the trial court took into account defendant's subsequent convictions for fleeing and eluding a police officer and unlawfully possessing a loaded firearm, both of which were not accounted for by the sentencing guidelines.

The trial court determined that defendant was not ready to be released on probation as evidenced by his incurring 60 to 80 additional misconducts during his placement at the HYTA correctional facility, including misconducts that occurred between the first HYTA revocation hearing on June 3, 2021, and the continuation of the HYTA revocation hearing on July 14, 2021. Importantly, defendant's misconducts included violent behaviors such as assault and battery, threatening behavior, and fighting. In the trial court's view, defendant's continued inability to control his behavior, including up until the final revocation hearing, evidenced he was not ready to be released on probation.

Defendant contends certain misconducts resulted from situations where he had to defend himself from other inmates. Even if this were true and somehow excused his behavior, many other misconducts

are unrelated to self-defense, such as disobeying direct orders, interference with rules, insolence, theft, substance abuse, sexual misconduct, and assaulting a prison guard, among others. This leaves defendant with a long list of unjustifiable misconduct. Furthermore, defendant admitted he was "racking up" misconducts simply because he was frustrated with his incarceration. Thus, we have little trouble concluding that it was reasonable for the trial court to add three additional years to defendant's original sentence in order to give defendant time to mature and rehabilitate, as well as protect the public from defendant's violent tendencies and uncontrolled behavior.

There is nothing in the record demonstrating the trial court clearly erred when it found defendant was not amenable to rehabilitation and needed time to mature and grow before being released—all factors the trial court relied on in departing upward from the minimum sentencing guidelines range. See *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (holding a trial court's findings of fact are reviewed for clear error). Indeed, defendant repeatedly failed to conduct himself properly at the HYTA facility, supporting the trial court's determination that defendant was not amenable to rehabilitation. "This Court has affirmed upward departure sentences when the guidelines minimum sentence range did not adequately account for a defendant's . . . poor prospects for rehabilitation." *People v Abcumby-Blair*, 335 Mich App 210, 243; 966 NW2d 437 (2020). The minimum sentencing guidelines range did not account for defendant's misconduct at the HYTA correctional facility or his subsequent offenses, both of which evidenced defendant's failure to rehabilitate. See *Walden*, 319 Mich App at 352-353 (noting a defendant's misconduct while in custody is not a factor that is considered by the sentencing guidelines). Therefore, the trial court's finding that defendant was not amenable to rehabilitation, even after having spent 809 days in a HYTA correctional facility, was not clearly erroneous and supported its decision to sentence defendant to an additional three years.

Though defendant claims on appeal that he was unable to conduct himself properly because he could not get the same medication in the HYTA correctional facility that he was taking before going into custody, defendant did not make this claim in the lower court, nor has he factually supported this argument. Therefore, we decline to address it. See *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Additionally, defendant claims the trial court erred by imposing three additional years to give him time to mature when the trial court did not know when defendant would mature. While it is true the trial court could not definitively know when defendant would mature, the trial court knew defendant had not improved his behavior in the 809 days he had been in a HYTA correctional facility, nor during the eight years defendant had been involved in the legal system. The trial court sentenced defendant to an additional three years based on defendant's failure to reform and his unpreparedness for release. Thus, defendant's sentence of 6 to 15 years was not unreasonable, and we affirm it.

## IV. MCL 769.1k

Defendant also argues his due-process right to be sentenced by a neutral judge was violated because the trial court judge was financially incentivized to impose high court costs given that the payments are used to finance the court. This Court has previously determined MCL 769.1k(1)(b)(*iii*) is constitutional in response to the same argument defendant raises in this case. See *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021), lv gtd 509 Mich 1094 (2022). Accordingly, defendant's argument is rejected under binding precedent from this Court.

### A. STANDARD OF REVIEW

-5-

Defendant failed to raise this issue in the trial court. Thus, this Court reviews unpreserved constitutional claims for plain error affecting a defendant's substantial rights. *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020). To show plain error, a defendant must demonstrate that "1) an error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

At the time defendant was sentenced, MCL 769.1k stated in relevant part:

(1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:

(a) The court shall impose the minimum state costs as set forth in section 1j of this chapter.

(b) The court may impose any or all of the following:

(i) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(ii) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

*(iii) Until October 1, 2022, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:*

*(A) Salaries and benefits for relevant court personnel.*

*(B) Goods and services necessary for the operation of the court.*

*(C) Necessary expenses for the operation and maintenance of court buildings and facilities.*

(iv) The expenses of providing legal assistance to the defendant.

(v) Any assessment authorized by law.

(vi) Reimbursement under section 1f of this chapter. [Emphasis added.]

As noted, this Court has previously considered the same argument and rejected it. In *Johnson*, 336 Mich App at 693, the defendant argued MCL 769.1k(1)(b)(*iii*) was unconstitutional as it results in criminal defendants being deprived of their "due-process right to appear before an impartial decision-maker because the statute incentivizes all judges to convict criminal defendants and impose court costs to raise revenue for the courts." The defendant also argued MCL 769.1k(1)(b)(*iii*) violated separation-of-powers

principles by preventing the judicial branch from abiding by its constitutional obligation to maintain impartiality in criminal trials. *Id*. at 693.

We rejected the implication that a judge's discretion to impose costs under MCL 769.1k(1)(b)(*iii*) is unbridled, noting judges are bound to impose costs reasonably related to the actual costs incurred by the trial court and must have a factual basis for the costs imposed. *Id*. at 700-701. Regarding the defendant's separation of powers argument, this Court concluded that the defendant provided no evidence of a direct correspondence between the court costs imposed and the money received by the cost-imposing court. *Id*. at 701. The defendant bore the burden to prove there was no set of circumstances under which a judge in Michigan could act impartially under MCL 769.1k(1)(b)(*iii*), which the defendant failed to do. *Id*. at 701-702. Accordingly, we rejected the defendant's argument that MCL 769.1k(1)(b)(*iii*) denied defendants their due-process right to be sentenced by an impartial judge because of improper financial incentives to convict defendants and impose court costs.

Here, defendant argues MCL 769.1k(1)(b)(*iii*) is unconstitutional because it creates pressure on judges to convict defendants and impose court costs, undermines criminal defendants' due-process right to appear before a neutral judge, and violates the separation of powers by preventing the judicial branch from accomplishing its constitutional obligation to be impartial. These are the same arguments rejected in *Johnson*, which we are bound to follow. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis.").[3]

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

---

[3] Though leave to appeal has been granted by the Supreme Court in *Johnson*, the case remains binding precedent until the Supreme Court reverses the decision. See MCR 7.215(C)(2) ("[A] Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.").